STATE v. SCOTT, County Com'r.*
(No. 1359; June 22, 1926; 247 Pac. 699.)

JUDGMENT—REMARKS DICTATED TO REPORTER ARE NOT—COURT REPORTER IS NOT CUSTODIAN OF JUDGMENT RECORD—COURT'S REMARK THAT HE WANTED REMOVAL OF DEFENDANT, VERDICT TO CARRY COSTS, INSUFFICIENT AS JUDGMENT—ENTRY IN CLERK'S MINUTES OF TRIAL INSUFFICIENT AS JUDGMENT—COURTS—RECORD OF VERDICT IS NOT JUDGMENT—SUFFICIENCY OF MOTION TO VACATE JUDGMENT—COUNTIES—REMOVAL OF OFFICERS—GOVERNOR'S DIRECTION FOR REMOVAL ACTION—"EJUSDEM GENERIS"—APPEAL AND ERROR—PLEADING—MOTION FOR DEFINITE STATEMENT IN PLEADING—MISCONDUCT DURING FORMER OFFICIAL TERM NOT GROUND FOR REMOVAL FROM PRESENT TERM—INCOMPETENCY, DISCONNECTED WITH MISCONDUCT OR MALFEASANCE, INSUFFICIENT TO JUSTIFY REMOVAL OF COUNTY COMMISSIONER—IMPEACHMENT—CHARGES FOR REMOVAL OF OFFICER—AVERMENTS OF NUMEROUS ACTS OF MISCONDUCT TOO GENERAL—JUDGMENT ON PLEADINGS—CHARGES CONSTITUTING CONCLUSIONS OF LAW INSUFFICIENT—SUFFICIENCY OF ITEMIZED CLAIM—VERIFICATION—COMPENSATION FIXED BY COMMISSIONERS AMOUNTS TO SPECIFIED FEE ALLOWED BY LAW—GROUNDS OF REMOVAL.

1. Court's remark, in action to remove county commissioner, ordering "removal of the defendant from office, and you may let the record so show, Mr. Reporter," together with statement that directed verdict would include costs, *held* not to constitute judgment of removal on verdict, where verdict had not been returned, but was merely indication of what it would be.

2. Court reporter's duty is not to record judgments, and he has neither custody nor control of official court records in which judgments are recorded, in view of Comp. St. 1920, §5542, providing for books to be kept by him.

3. Court's remark that he "orders the removal of defendant from office," and that verdict would carry costs, *held* insufficient to constitute judgment in action for removal of county commissioner, in view of Comp. St. 1920, §§ 1398-1407, under which it was brought, since judgment must remove "from said office," and it, rather than verdict, must tax costs.

4. Entry in clerk's minutes of trial, which were entered in journal in action to remove county commissioner, that court "ordered the removal of the defendant from office, the verdict to include costs," *held* not to be considered as clerk's entry of judgment in conformity with verdict, since it is not in proper form, in view of Comp. St. 1920, §§ 5900, 5903, and minutes showed that verdict was not returned at time.

5. Clerk's minutes have no effect as record, and recording them in journal merely as record of minutes adds nothing.

6. Verdict that county commissioner had been guilty of misconduct and malfeasance, though recorded in journal as such, *held* not to amount to judgment or rendition of judgment of removal.

7. Date of rendition of judgment on directed verdict *held* to be same as date of its entry in journal made at succeeding term, there being no record of its rendition at trial term, so that motion for its vacation and for judgment notwithstanding verdict was properly made at such succeeding term, under Comp. St. 1920, § 5895, as against contention based on sections 5893, 5894, that motion was one to vacate judgment after term without complying with sections 5923-5934.

8. Procedurally action to remove county commissioner from office under Comp. St. 1920, §§ 1398-1407, will be treated as civil case.

9. Governor's letter, directing that action be brought to remove county commissioner, need not designate particular acts of misconduct or malfeasance.

10. Governor may properly direct action for removal of county commissioner under Comp. St. 1920, §§ 1398, 1399, upon examination of report of state examiner, since words "or otherwise" in section 1399, following provision that Governor shall act on verified written complaint of qualified electors, include other substantial and ordinarily reliable information of equal force and effect as affidavit of electors.

11. Words "otherwise" in Comp. St. 1920, § 1399, following provision that Governor shall act on verified written complaint of qualified electors in directing action for removal of county commissioner, should not be construed by rule of "ejusdem generis" under which, where specific enumeration concludes with general term, latter is limited to things of same kind, since they are not preceded by enumeration of particular terms or words.

12. Requirement in Comp. St. 1920, § 1399, that Governor shall act on verified written complaint of qualified electors in directing action to remove county commissioner, *held* to limit source of information to something substantial and ordinarily reliable, in form to be preserved, but not to require that information be furnished by affidavit of electors.

13. Whether court erred in action to remove county commissioner in granting defendant's motion for judgment notwithstanding verdict must be determined on pleadings.

14. Petition, in action to remove county commissioner under Comp. St. 1920, §§ 1398-1407, alleging that action was instituted by direction of Governor, *held* sufficient as against demurrer or motion after verdict alleging it was insufficient to confer jurisdiciton; it not being necessary for petition to allege source of Governor's information or particular acts of misconduct designated by Governor.

15. Governor's official direction for bringing action to remove county commissioner under Comp. St. 1920, §§ 1398-1407 *held* to carry presumption, so far as question of initial pleading is concerned, that he has acted in accordance with statute, which, however, may be denied by defendant.

16. Motion at trial to make more definite and certain *held* proper means for county commissioner, in removal action, to ascertain means of Governor's information not stated in petition.

17. Under Comp. St. 1920, §§ 1398-1407, relative to removal of county officers, only pleadings allowed are petition and answer, and allegations in latter are considered denied without reply, so far as its allegations conflict with former, in view of section 1400.

18. Objection in action for removal of county commissioner under Comp. St. 1920, §§ 1398-1407, that petition failed to allege source of Governor's information, should be raised at trial, in view of section 1401.

19. County commissioner's acts of misconduct or malfeasance, occurring during term of office immediately preceding present term, which were of such nature that they might be discontinued at subsequent term, *held* not ground for removal from office under Comp. St. 1920, §§ 1398-1407, providing for removal for misconduct or malfeasance "in office," since such words indicate that removal is intended to be from office in which misconduct occurred.

20. General incompetency, disconnected with misconduct or malfeasance, would be insufficient to justify removal of county commissioner under Comp. St. 1920, §§ 1398-1407.

21. County officers are not subject to impeachment.

22. Charges for removal of county commissioner under Comp. St. 1920, §§ 1398-1407, should be sufficiently explicit to give defendant notice of what he is required to answer.

23. In action for removal of county commissioner under Comp. St. 1920, §§ 1398-1407, averments that defendant failed to advertise for bids for roads and bridges and purchase of supplies *held* too general.

24. In action to remove county commissioner under Comp. St. 1920, §§ 1398-1407, averments of petition charging that defendant had been guilty of "numerous acts of misconduct and malfeasance in office" *held* too general.

25. County commissioner *held* entitled to judgment on pleadings in removal action as to those paragraphs which were too general, regardless of evidence.

26. In action for removal of county commissioner under Comp. St. 1920, §§ 1398-1407, averments that defendant unlawfully paid unitemized accounts for services for which no

specified fees were allowed, in violation of official oath and bond, *held* insufficient; such allegations being conclusions of law.

27. Claims of one regularly employed by county as deputy county clerk, keeper of hospital accounts, and assistant to commissioners in audit of claims, for "services rendered during the month of January" and for "25 days during the month of February, doing county work, 25 days at $6 a day," *held* to consist of single items, time for performance of which was sufficiently stated.

28. Where form of oath at bottom of claim submitted to county commissioners was signed by claimant, but not by county clerk administering oath, county commissioner should be permitted, in action for his removal, to show that claimant had sworn to claim before proper officer, who neglected to sign jurat.

29. Salary, or day, week, or monthly wage, fixed by county commissioners by authority of law, and made matter of record in their proceedings *held* to amount to specified fee allowed by law.

30. To justify removal of county commissioner for violating Comp. St. 1920, §§ 1416, 1417, relative to payment of unitemized claims, neglect should involve willful design or indicate habitual inattention to public business, since not every technical violation of statute or official duty will justify summary removal.

*See Headnotes: (1) 34 C J p. 62 n. 43. (2) 34 C J p. 59 n. 1. (3) 34 C J p. 48 n. 85. (4) 34 C J p. 62 n. 43. (5) 34 C J p. 47 n. 78. (6) 34 C J p. 62 n. 43. (7) 34 C J pp. 70 n. 30, 261 n. 3. (8) 15 C J p. 495 n. 89. (9) 15 C J p. 496 n. 95. (10) 15 C J p. 495 n. 90. (11) 15 C J p. 496 n. 95. (12) 15 C J p. 496 n. 95. (13) 4 C J p. 678 n. 14. (14) 15 C J p. 496 n. 92. (15) 15 C J p. 496 n. 1. (16) 31 Cyc. p. 644 n. 68. (17) 15 C J p. 495 n. 90. (18) 15 C J p. 495 n. 90. (19) 15 C J p. 495 n. 69. (20) 15 C J p. 495 n. 78. (21) 15 C J p. 453 n. 83. (22) 15 C J p. 453 n. 95. (23) 15 C J p. 453 n. 95. (24) 15 C J p. 453 n. 95. (25) 15 C J p. 453 n. 6. (26) 15 C J p. 453 n. 94. (27) 15 C J p. 496 n. 95. (28) 15 C J p. 453 n. 8. (29) 15 C J p. 497 n. 12. (30) 15 C J p. 453 n. 89.

APPEAL from District Court, Natrona County; HARRY P. ILSLEY, Judge.

Action by the State for the removal of J. E. Scott from office as County Commissioner. Judgment for removal was vacated, plaintiff's action and petition were dismissed, and plaintiff appeals. See also 34 Wyo. 164; 242 Pac. 322.

*E. Paul Bacheller, R. R. Rose,* and *George A. Weedell,* for appellant.

The court erred in striking from the petition allegations of misconduct and malfeasance alleged to have been committed in 1924; an officer may be removed in one term for misconduct committed in a previous term of the same office; State v. Howse, (Tenn. 1916) Ann. Cas. 1917 C. 1125; State v. Bourgeois, (La.) 14 So. 28; Tibbs v. Atlanta, (Ga.) 53 S. E. 811; Allen v. Tufts, (Mass. 1921) 17 A. L. R. 274; Hawkins v. City, (Mich. 1916) Ann. Cas. 1917 E. 700; State v. Welch, (Ia. 1899) 79 N. W. 369; Territory v. Sanches, (N. M.) 94 Pac. 954; State v. Megaarden, (Minn.) 89 Am. St. Rep. 534. Cases to the contrary are decided on the principle of condonation; Brackenridge v. State, (Tex.) 4 L. R. A. 360; Graham v. Jewell, (Ky.) 263 S. W. 693; State v. Patton, (Mo.) 110 S. W. 636; and are qualified if gross immoral acts or defalcation are shown; State v. City, 9 Wisc. 254; and retention of money in a present term, unlawfully retained in a preceding term, constitutes misconduct in the present term; State v. Lazarus, 1 So. 361; Woods v. Varnum, 24 Pac. 843; State v. City, 33 N. Y. S. 165. This proceeding is based upon the following sections of the constitution and statutes of the State: Article 3, Sec. 19; Art. 16, Sec. 7; Art. 6, Sec. 8, Const; 1398, 1399, 1400, 1401, 1416, 1417, 1422, 1373; 3064, 1408, C. S. A sheriff may be removed for misconduct in a previous term; State v. Welsh, (Ia.) 79 N. W. 369; State v. Watertown, 9 Wis. 254; offenses committed subsequent to re-election, but in the same term, are not condoned by re-election; Brackenridge v. State, Supra; nor unlawful retention of funds; State v. Patton,

Supra; Smith v. Ling, (Cal.) 9 Pac. 171; Advisory Opinion, 31 Fla. 1, 12 So. 114; 18 L. R. A. 594. A careful examination of many of the cases cited for defendant will show that they are not applicable here; additional authorities supporting the principle of removal for acts committed during a previous term are: State v. Hasty, 50 L. R. A. N. S. 559; People v. Auburn, 33 N. Y. S. 165; State v. Patton, Supra. Judgment was rendered on September 3, 1925. Defendant's motion, filed on September 10th, came too late since it sought to vacate a judgment rendered at a previous term; the final judgment of a court is that rendered in open court and not the memorandum prepared and signed by the Judge as a guidance to the clerk; a motion to vacate and set aside a judgment, rendered at a previous term, constitutes a collateral attack upon the judgment; a judgment will be sustained upon a collateral attack unless wholly void; the distinction between rendition and entry is clear; Freeman, 5th Ed., Sec. 46-48; 15 R. C. L. 571, 578; U. S. v. Stoller, 180 Fed. 910; in Re Cook's Estate, (Cal.) 19 Pac. 431; Trust Co. v. Mining Co., (Nev.) 97 Pac. 390; McIntyre v. R. Co., (Mont.) 191 Pac. 1065; Livingston v. Livingston, (Ind.) 121 N. E. 119; Goldreyer v. Cronan, (Conn.) 55 Atl. 594. 5896 authorizes a judgment notwithstanding the verdict, at the same term; a motion to vacate the judgment was a collateral attack; Freeman, 5th Ed., 547; People v. Norris, (Cal.) 77 Pac. 998; Miller v. Mattigan, (Okla.) 215 Pac. 742; Reid v. Fillmore, (Wyo.) 73 Pac. 849; Board v. Co., (Kan.) 103 Pac. 996; Freeman, supra, Sec. 305. Motions are defined in Hall Oil Co. v. Barquin, (Wyo.) 237 Pac. 255. Procedure for attacking judgments, at a succeeding term, is prescribed by Chapter 370, C. S. Irregularities in obtaining a judgment is defined in Mitter v. Coal Co., (Wyo.) 206 Pac. 152. Judgments will be sustained upon a collateral attack unless wholly void; Freeman, Sections 221, 222; Land Co. v. Hoffman, (Wyo.) 219 Pac. 561; State v. Court, (Wyo.) 238 Pac. 545; Freeman,

Sec. 226. Claims against counties must be itemized and verified before allowance; 1416 C. S. A violation of this section creates liabilities on the commissioner's bond; 1417, C. S.; and is ground for removal; 1422 C. S.; bridge construction must be done by contract after advertising for bids; 3064, C. S. Misconduct and malfeasance in office has been defined by this court; People v. Shawver, (Wyo.) 222 Pac. 11; State v. Ross, (Wyo.) 228 Pac. 636. Actions for removal must be tried in a summary manner; 1401, C. S.; meaning without delay or formality; 37 Cyc. 527; State v. Borgeois, Supra; State v. Whittaker, 41 So. 218; State v. Borstad, (N. D.) 147 N. W. 380; Reid v. Court, (Cal.) 186 Pac. 634. The judgment rendered on October 12, 1925 should be vacated, and the judgment rendered on August 5, 1925 should be sustained.

*W. H. Patten, Ambrose Hemingway, K. W. McDonald* and *E. E. Enterline,* for respondent.

The trial court was without jurisdiction of the case; the prosecution was commenced under Chapter 99, C. S., but the procedure therein described was not followed; 1398, 99 C. S. The prosecution was founded upon an examination made by the state examiner and not upon a verified complaint in writing of electors of the county, made to the Governor. The word "such", as used in Section 1399 C. S., has a definite meaning; Ex Parte Hull, (Idaho) 110 Pac. 256. Mere assertions of counsel cannot dispense with the plain requirement of the statutes, requiring charges against a public officer to be in writing in accordance with the statute; State v. Grant, 14 Wyo. 41; County v. Thorne, (S. D.) 61 N. W. 688; State v. Blande, (Mo.) 41 L. R. A. 297; White v. Veitch, (Wyo.) 197 Pac. 893; Kirby v. Western Union, (S. D.) 57 N. W. 202; Wishek v. Becker, (N. D.) 84 N. W. 590; State v. Thompson, (Minn.) 97 N. W. 887; Burkholder v. People, (Colo.) 147 Pac. 347; Kingfisher County v. Graham, (Okla.) 139 Pac. 1149; Schaeffer v. Jackson, (Okla.) 255 Pac. 961; Holdridge v. Fields, (Mo.) 275 S. W. 642. The

statute is penal and must be strictly construed; W. C. S. 1920, Sec. 5532; People v. Dolan, 5 Wyo. 245; Baker v. County Commissioners, 9 Wyo. 51; State v. Friars, (Wash.) 39 Pac. 104; Burke v. Knox, (Utah) 206 Pac. 712; State v. Leahy, (N. M.) 231·Pac. 197; Gibson v. Campbell, (Wash.) 241 Pac. 21. The·petition does not state facts sufficient to constitute a cause of action or grounds for removal of defendant; the individual acts of a member are merged in the action of the board; 22 R. C. L. Sec. 165, p. 487; Monnier v. Godbold, (La.) 40 So. 604; Commissioners v. Seawell, (Okla.) 41 Pac. 592; Commissioners v. Co., (Okla.) 228 Pac. 1103; State v. Kennedy, (Kan.) 108 Pac. 837; 23 A. & E. of Law, 2d Ed., 379, Sec. E. The Legislature having provided what action can be taken against the board for wrongful allowance of claims, in violation of 1416 C. S., precludes an action against a commissioner for removal; Appel v. State, 9 Wyo. 187; State v. Grant, 14 Wyo. 41. Payment of claims devolves upon the board and not upon individual members; Corker v. Pence, (Idaho.) 85 Pac. 388; State v. Kennedy, Supra; Hudson v. Dertsch, 220 Pac. 109; 1422 C. S. has no application to this case; the board acts in a quasi judicial capacity, in the allowance of claims, and, in the absence of fraud and corruption, members cannot be held personally liable therefor; Salt Lake County v. Clinton, (Utah) 117 Pac. 1075; Bailey v. Van Dyke, (Utah) 240 Pac. 454; Bunten v. Assn., 29 Wyo. 461; State v. Friars, supra. Where removal is sought for neglect of duty, it must be shown that the action of the official was prompted by evil intent or legal malice, and committed during his current term; 15 C J 453; State v. Zeagler, 202 N. W. 94. An official cannot be removed for alleged misconduct or malfeasance committed in a prior term; 29 Cyc. 1410; State v. Hasty, (Ala.) 63 So. 559; Thurston v. Clark, (Cal.) 40 Pac. 435; Re Advisory Opinion, (Fla.) 60 So. 334; State v. Henschel, (Kan.) 175 Pac. 393; State v. City, 25 N. J. L. 536; Conant v. Grogan, 6 N. Y. S. R. 322; Carlisle v.

Burke, 14 N. Y. S. 163; State v. Loomis, 29 S. W. 415; Gordon v. State, 43 Tex. 330; State v. Patten, (Mo.) 110 S. W. 636; Graham v. Jewell, (Ky.) 263 S. W. 693. A judgment entered on September 1, 1925 was properly vacated by judgment made October 1, 1925 and entered October 12, 1925; 1401 C. S.; Hahn v. Bank, 25 Wyo. 467 does not support plaintiff's contention; the vacation of the judgment was authorized by our statutes; 5895 C. S.; Trimble v. Doty, 16 O. S. R. 119; Jones v. R. R. Co., 23 Wyo. 140; Grover Co. v. Ditch Co., 21 Wyo. 204; the court had inherent power to vacate the judgment; McGinnis v. Beatty, 28 Wyo. 328; Mitter v. Coal Co., 28 Wyo. 439; White Co. v. Hamilton, (Wyo.) 226 Pac. 687; Burnham v. Burnham, 242 Pac. 124; Hall Oil Co. v. Barquin, (Wyo.) 237 Pac. 255. Error cannot be assigned upon the written or oral opinion of the trial judge in announcing his decision; Co. v. Barker, 2 F. (2nd) 468; Outlook Co. v. Surety Co., (Mont.) 223 Pac. 905; Troy v. Troy, (Cal.) 238 Pac. 143. The judgment vacating the judgment first rendered should be affirmed.

POTTER, Chief Justice.

This is an action brought in the name of the State by the county and prosecuting attorney of Natrona County, in the district court in that county, for the removal of the defendant, J. E. Scott, from his office of County Commissioner. The petition, commencing the action, was filed on June 8, and the answer on July 11, 1925. The action is conceded to have been brought under the provisions of Chapter 99, Comp. Stat. 1920, which comprises Sections 1398 to 1407 inclusive of that compilation, and relates solely to the removal of county officers. There was a trial concluding with a verdict for plaintiff by direction of the court and filed on August 5, 1925. A judgment was thereafter entered upon the verdict removing the defendant from his said office and directing that he pay the costs of the action. That judgment was later vacated upon defendant's motion, and, by the same order, entered on Oc-

tober 12, 1925, the plaintiff's action and petition were dismissed, and the defendant restored to his said office and to all the rights and privileges thereof. The cause is here on appeal from this last mentioned order.

· 1. There is a dispute between counsel as to the *date* of the *rendition* of the original judgment, although it seems to be conceded that it was *entered*, at least in its complete form, by entry upon the journal of the formal written order signed by the trial judge on September 3, 1925, the first day of the term next succeeding the term at which the trial occurred and the verdict was returned. Appellant's contention in that respect is that the judgment was actually rendered on August 5, the date of the return and filing of the verdict, and that the court was without authority to vacate it and render the new judgment at the subsequent term. That is one of the propositions urged as ground for reversal, and we think the question should be ·first considered.

The motion sustained by the order appealed from was filed on September 10, 1925, and asked the vacation of the judgment theretofore rendered and entered against the defendant, and that judgment be entered in his favor, notwithstanding the verdict, upon five stated grounds, viz: 1. That upon the pleadings in the cause the defendant is entitled by law to judgment in his favor. 2. Because the petition in the cause does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. 3. Because the facts stated in the petition are not sufficient to authorize the commencement or prosecution of said action or a judgment in plaintiff's favor. 4. Because the petition fails to state facts sufficient to charge either misconduct or malfeasance in office on the part of the defendant, or to warrant a judgment removing him from office. 5. Because the charges set forth in paragraphs 38, 39 and 41 of the petition, as amended, are not sufficient to constitute misconduct or malfeasance in office. It states another general

ground, based upon the same specific grounds, that the court was without jurisdiction to render or enter judgment against the defendant. The right to make that motion is claimed under Section 5895, Compiled Statutes 1920, which has been a part of our code of civil procedure since its original enactment, and provides that "when, upon the statements in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, although a verdict has been found against such party." See Jones v. C. B. & Q. R. R. Co., 23 Wyo. 148, 147 Pac. 508; McCoy v. Jones, 61 O. S. 119, 55 N. E. 219; Campbell v. Weller, 25 Wyo. 65, 164 Pac. 881; Dow v. Bryant, 28 Wyo. 508, 206 Pac. 1061. Upon the theory of defendant's counsel, if correct, that the judgment and the only judgment rendered and of record in the cause, is the judgment shown by the formal written order signed by the judge, filed in the clerk's office and entered upon the journal on September 3, 1925, the first day of the September, 1925, term of said district court, the defendant would be entitled to file such a motion as of the time it was filed and have it considered.

It is, however, the contention of appellant's counsel that said judgment so entered was merely the *formal entry* of a judgment *pronounced* by the court at the previous term. It is based upon certain facts appearing in the record of the trial term, and the provision of the statute that "when a trial by jury has been had, judgment must be entered by the clerk in conformity with the verdict, unless the verdict is special, or the court order the case to be reserved for future argument or consideration." Comp. Stat. 1920, Sec. 5893. In connection with that it may be well to quote the next succeeding section (5894) which provides that "when the verdict is special, or when there is a special finding on particular questions of fact, or when the case is reserved, the court shall order what judgment shall be entered." Appellant's contention is that the rendition of judgment is a judicial act, while its entry

upon the record is merely ministerial; that the judgment
is what is ordered and considered rather than what is
entered; that the rendition may be by pronouncement of
the court in open court orally as well as in writing, as
when pronounced from the bench; and that such a pro-
nouncement by the court in this case occurred on August
5, 1925, concluding the trial. And from that it is argued
that the defendant's motion aforesaid was an attempt to
vacate a judgment after the term at which it was "made"
or "rendered," a proceeding provided for by Chapter 370,
Comp. Stat. 1920, but without adopting the statutory pro-
cedure thereby prescribed.

But we shall consider the motion, acted upon and sus-
tained as aforesaid, as a motion for judgment notwith-
standing the verdict; and we see no reason to doubt that
the trial court so considered it. We need not, therefore,
consider what its effect might be as a motion to vacate a
judgment after the term at which it was made or rendered.
We might yield ready assent to legal principles above
stated as counsel's contention concerning the distinction
between or the relative effect of rendition and entry of a
judgment, so far as the points involved in this case are
concerned. In the form as stated in appellant's brief,
they are taken from certain sections in the 5th edition of
Freeman on Judgments and supported by other authori-
ties cited in said brief. But we are unable to agree with
the understanding or interpretation of appellant's coun-
sel of the effect of the facts recited in the record as hav-
ing occurred at or in immediate connection with the con-
clusion of the trial of the case. We fail to find in those
facts any competent or satisfactory evidence of a judicial
pronouncement of a judgment upon the verdict. And,
while we do not understand it to be positively asserted
that a judgment upon that verdict was entered by the
clerk in the court's journal in or pursuant to the pro-
visions of Section 5893, Comp. Stat. 1920, above quoted,
we think it not improper to say that whatever may have

been intended as appellant's contention in that particular, we find no journal entry at the said trial term, or as of any day of that term sufficient in form or substance to constitute an entry of a judgment in compliance with the provisions of said section.

The facts relied on by appellant to establish the rendition of a judgment at the trial term will now be stated, commenting thereon as we proceed: At the conclusion of the evidence, both sides announced that they had nothing further to present, "whereupon," as recited in the reporter's transcript, "the testimony in said matter was closed and there followed argument of counsel upon the various motions submitted, after which court stood in recess until the hour of nine o'clock, a. m., August 5th, 1925." That is immediately followed by this recital: "Pursuant to adjournment, the hearing reconvened at the hour of nine o'clock a. m. August 5, 1925, the same appearances being noted as at the previous session, whereupon the following proceedings were had, to-wit:" Then follows remarks by the court, parts of which we quote:

"Gentlemen, there were several matters taken under advisement last evening at adjournment. First, there was some controversy as to the motion to dismiss. The court overruled that motion, but I don't know whether you meant to withdraw it or to leave it stand, as there were several remarks of that kind made. However, the court will adhere to its ruling. * * *. I believe, gentlemen, that it is the duty of the court to take this cause from the jury, because I do not think there is a disputed fact in the evidence to submit to the jury. * * * Practically all of the petition is stricken from the record, save and except the 38th and 39th paragraphs, which charge * * * failure to comply with the law in allowing claims against the county, and the 41st paragraph, charging failure to comply with the law in not advertising for bids for road and bridge work. * * * The evidence is clear that the

defendant, J. E. Scott, as county commissioner of Natrona County, not only permitted the doing of the wrongful acts complained of, but officially neglected to do those acts which should have been done. The jury is directed to return a verdict for the plaintiff, and the court orders the removal of the defendant from office, and you may let the record so show, Mr. Reporter.''

The reporter's recital then proceeds from that point:

''Mr. Sennett: Will that verdict include the costs of this plaintiff, as provided by statute? The court: Yes, that carries costs with it. Mr. Patten: We wish to note an exception to the ruling of the court.'' It may be explained that Mr. Sennett was one of counsel for the state, the plaintiff in the action, and Mr. Patten one of counsel for the defendant.

It is contended that the closing words of the court's remarks ''the court orders the removal of the defendant from office, and you may let the record so show, Mr. Reporter,'' together with the interrogation of Mr. Sennett and the court's reply as to the verdict including costs, constituted a judgment of removal upon the verdict. But a conclusive answer to that contention, in the first place, is that there had then been no verdict returned, so far as the record discloses; and it seems quite evident that none had then been returned, because all the remarks of court and counsel just recited must necessarily be understood as having occurred before the return of the verdict. Hence the time or occasion for rendering judgment had not arrived. As said in Section 48, Vol. 1, 5th Ed., Freeman on Judgments, cited by appellant, ''before a pronouncement should be taken as the judgment it must be clear that it was intended as such and not merely an announcement of the opinion of the court or an indication of what the judgment is going to be.''

Again, the concluding direction to let the record so show was addressed to the reporter, whose duty is not to record judgments, and who has neither the custody nor control of any of the official court records in which judgments are recorded. We cannot consider said remarks as intended as a rendition of judgment, but we understand them merely as announcing what was intended should occur at the appropriate time when finally disposing of the case. Indeed, throughout said remarks they seem to have been addressed to counsel, stating the court's views of the case, what it was intending to do and its reasons therefor. But, if not so, the remark that the court "orders the removal of the defendant from office" is not sufficiently complete to constitute a judgment, nor would it be with the addition of the words that the verdict will carry costs. The statute under which the action was brought requires that if upon the trial the court shall find that the defendant has been guilty of the misconduct or malfeasance in office charged in the petition, "a judgment shall be entered removing the defendant from said office and taxing against him the costs of the action." The judgment must remove from *said* office. And, clearly, the judgment rather than the verdict must tax the costs against the defendant.

The verdict was filed on August 5, and, in the body thereof, reads as follows:

"We, the jury duly impaneled and sworn to well and truly try the above entitled cause, at and by the direction of the court, do hereby return our verdict in favor of the plaintiff and against the defendant upon the issues in this case, and do find the defendant, J. E. Scott, guilty of misconduct and malfeasance in office."

Appellant relies also upon a paper appearing in the record entitled "Clerk's Minutes," which is certified as having been made by the clerk during the trial of said case and as having been recorded in Journal 16 at page

535 "of the records of said court on the 5th day of August, 1925." As so recorded in the journal, it appears to be, as entitled, "Clerk's Minutes," and it is so described in the clerk's certificates authenticating the Record on Appeal. As so recorded also, it contains a caption describing the parties and the court in the ordinary formal manner, and above that across the top a line heading reading as follows: "156th day. March term, 1925. Wednesday, August 5th, 1925." The opening paragraph contains a formal statement that the "above matter" came on for trial at nine o'clock, a. m., on August 3rd, 1925, Hon. Harry P. Ilsley presiding, with a jury regularly impaneled and sworn, consisting of the following (naming the jurors). The remainder of the body of the paper contains informal mention of the proceedings of the trial, in the order of their occurrence, covering the 3rd, 4th and 5th days of August; the several matters being noted in short paragraphs each containing a single sentence, the period ending each sentence also ending the paragraph. With this explanation, the verbatim copy now to follow should be understood, though the separate paragraphs are not indicated except when quoting the words particularly involved in the contention here.

"Swearing of the jury followed, with the opening statements of the counsel for the plaintiff and defendant, after which court stood in recess until 9.00 o'clock a. m., August 4th, 1925. Witnesses for state sworn, examined and cross-examined. State rests. Thereupon the defendant moved the court to dismiss this action, which motion was denied. Thereupon the witnesses for the defendant were sworn, examined and cross examined. Defendant rests. Court stood in recess until the hour of 9.00 o'clock a. m. August 4th, 1925, because of several matters being taken under advisement. Thereupon, the plaintiff moved the court to direct a verdict in its favor. Thereupon the court stood in recess until the hour of 1.30 p. m., August 4th, 1925. Pursuant to adjournment the court reconvened at

the hour of 1.30 p. m. August 4th, 1925.   Thereupon the plaintiff was permitted by the court to re-open its case and present more evidence following which the evidence was closed and the court stood in recess until the hour of 9. a. m. August 5th, 1925.   Pursuant to adjournment, reconvened at the hour of 9.00 a. m. August 5th, 1925.''

"Thereupon, the court directed the jury to return a verdict in favor of the plaintiff and ordered the removal of the defendant from office, the verdict to include costs.

Thereupon, the jury returned their verdict in the following form, to-wit:''   Then follows a copy of the verdict, which concludes the "Minutes" recorded as above stated.

These minutes are in the record only as a certified true and correct copy of said minutes as entered in the court journal.   They are relied upon by appellant's counsel in support of their contention as to rendition of judgment because of the entry that on August 5 the court "ordered the removal of the defendant from office, the verdict to include costs.''

The heading, giving the consecutive day of the term, with the day of the week and month, cannot be of any great importance.   It would seem that it could not have been placed there before any of the entries made in said "Minutes," for they were made *during the trial,* as the clerk certifies, and include matters occurring on both the 3rd and 4th as well as the 5th of August, which, we may suppose, were respectively the 154th and 155th days of the term, and Monday and Tuesday of the week.   It is probable that such heading was placed at the top of the journal entry, without having appeared in the "minutes," as kept from day to day.   But whether so or not is of little consequence, as we view the point involved.

We must hold that the words of said "Minutes" cannot be considered as the clerk's entry of a judgment in conformity with the verdict.   It is not *in form* such an entry,

and purports to be nothing more than an entry of "Clerk's·Minutes." There is no statutory authority for the clerk's official entry of a judgment in any document or book other than the court journal, and when and as entered it should not be a mere copy of informal minutes or memoranda. The statute provides that "all judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in the action." Comp. Stat. 1920, Sec. 5900. It provides also (Sec. 5903) that the "record" shall be made up from the petition, the process, the return, pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court; these matters constituting the record proper in a case. See Seibel v. Bath, 5 Wyo. 409, 40 Pac. 756. The books provided by law to be kept by the clerk are an appearance docket, trial docket, journal, record and execution docket. Comp. Stat. 1920, Sec. 5542.

Such entry in the "minutes," as we have here, either separate and apart from the journal, or as recorded in the journal, cannot be considered or held to be a pronouncement of judgment by the court, or as competent evidence of any such pronouncement, for another and quite sufficient reason that they fail to show any intention by the court to render a judgment at the time that the minutes record the particular act as having occurred. It will be observed that substantially every paragraph of these minutes commences with the word "Thereupon" and that the paragraph reciting that the court directed the jury to return a verdict in favor of the plaintiff recites that also as having been done at the same time of the order for "the removal of the defendant from office." And that appears also from the reporter's transcript. Then, following such recital, is the word "thereupon," and the statement "the jury returned their verdict in the following form." Thus clearly showing that the verdict was returned after the court's said direction, and his recited act

of ordering defendant's removal from office; the only reasonable interpretation of which is that so far as the court may have expressed a purpose to make a final order it had reference to what might be done in the future, after a return of the verdict, or at the appropriate time for such an order.

In Robinson v. Govers, 67 Hun. 317, 22 N. Y. Supp. 249, it appeared that in an action for dower an unsigned memorandum handed down by the trial judge directed how the disputed interests should be collected, the amount of the costs, and the manner of payment. It was held that the memorandum was merely an indication as to how the judgment should be framed, and was not in itself a final judgment, the court saying:

"The memorandum in question was not the judgment of the court. It was simply an indication to the parties as to how the judgment to be entered upon the referee's report should be framed, in order that it might be duly entered. This is apparent, if any indication was needed, from the language of the memorandum itself. It is that the plaintiff should be allowed certain things, that costs should be allowed to the defendant, that the guardian ad litem should be compensated and that the costs and allowances are not to be charged against the gross sum, etc., clearly showing that the court, by the filing of this memorandum, which does not purport even to have been signed by the judge, was merely giving an indication as to how the order upon the motion should be framed; and, when the suggestions of the court were properly embodied in an order, then it directed its entry, which was the fact, because three days afterward, we find a formal order, entered by direction of the court, embodying the suggestions of the memorandum."

In Knapp v. Roach, 82 N. Y. 366, the question was whether certain steps taken by the plaintiff amounted to the entry of judgment of affirmance. He filed with the

clerk a decision of the General Term signed by one of the judges. The court said: "It has been correctly decided that the memorandum handed down by the General Term of the decision of the appeal is not the judgment, but simply the authority for an entry of the judgment. * * * What is called the judgment signed by Judge Spier is merely a memorandum of the decision of the general term on the appeal."

In Johnson v. Bemis, 7 Nebr. 227, it was held that the recital that the cause coming on to be heard on demurrer to the petition, the court, after hearing argument, and after due consideration, sustained the demurrer and rendered judgment for the defendant and against the plaintiff, for costs taxed at a stated amount, was not in itself a judgment, but a mere recital that one had been rendered for costs. In Stark v. Billings, 15 Fla. 318, it was held that an entry in the minutes "Verdict for plaintiff; let writ issue," is not a judgment, and that an execution issued thereon was void. The court said: "This is not a judgment, and did not warrant the issuing of a writ of any kind." At the conclusion of the hearing, upon a motion for a new trial, in a certain cause in Alabama, the attorney for one of the parties asked the judge for a judgment by default in another case, whereupon the judge made the following memorandum on the docket opposite the statement of the cause, viz: "Nov. 14, 1903. Judgment by default for plaintiff for $227; waiver of exemptions as to personal property," and immediately after making said entry the judge signed the minutes adjourning the court sine die. The clerk was not notified of that entry, nor was he aware of it until on December 28, 1903, when said attorney called for an execution, whereupon the clerk then wrote in the minutes a judgment in conformity with said entry on the docket, and issued execution thereon. The court held that such an entry on the docket was merely docket memoranda of the presiding judge, intended and operating only as directions to the

clerk as to what judgment should be entered in the record, and that the trial docket was not a record, and that hence no execution could lawfully have been issued. Winn v. McCraney, 156 Ala. 630 46 So. 854. In Morgan v. Flezner, 105 Ala. 356 16 So. 716, it was held that an entry upon the trial docket by the judge upon the hearing of a motion, "Refused, and movant excepts and is given forty days from adjournment of court to present bill of exceptions" was not a judgment upon the motion but only a docket memorandum intended and operating merely as a direction to the clerk as to what judgment should be entered, and that from said docket memorandum an appeal would not lie.

In Balm v. Nunn, 63 Ia. 641, 19 N. W. 810, it was held that the evidence conclusively showed that although a verdict had been rendered for the plaintiff on December 20, 1881, no judgment was rendered at that term. The facts were that within the time in which a motion for a new trial that had been filed was to be decided, and in vacation, the judge advised the clerk of his decision overruling the motion, and directed him to make entry, as noted in the term docket or court docket, but no entry of judgment was made before execution was issued. The court said: "There can be no judgment until it is entered on the proper record of the court. It cannot exist in the memory of the officers of the court, nor in *memoranda* entered upon books not intended to preserve the record of judgments. It is not competent to prove a judgment in any other way than by the production of the proper record thereof." In Cooley v. Ayers, 180 Ala. 740, 163 N. W. 625 there was a memorandum appearing on the calendar, "Trial and decree as per entry to be signed." The court said: "Of course, the notation on the judge's calendar does not constitute the judgment or decree, but is, ordinarily, a mere reminder or direction to the clerk of the court to enter the same. Here, it indicated only that a decree to be signed was to be entered.

It is not a part of the record. And, as between the memorandum on the calendar and the entry in the record book, the latter governs. Nor can it be said that evidence of an oral announcement of the judge is entitled to any more weight than his memorandum thereon in the court calendar. All previously said is merged in the decree as spread on the record book." In Brownell v. Superior Court, 157 Cal. 703, 109 Pac. 91, it appeared that in a proceeding for partial distribution of an estate, no person having appeared in opposition thereto, the court, after the usual ex parte proofs, "orally announced that the petition was granted and the clerk made a memorandum to that effect." But that "no order was prepared or signed at that time," and nothing further appeared to have been done until some weeks later, when a paper purporting to be the order for partial distribution was filed in the cause, which was signed by the judge, closing in usual form thus: "Done in open court and dated" etc. Thereafter said order was entered in the minutes of the court. The court said: "The memorandum of the clerk to the effect that the petition was granted, was made in a book which the plaintiffs in the cause then before the court designated as the rough minutes of the court, and which in the answer is styled a blotter. There is no law providing for 'rough minutes.' The clerk doubtless finds it necessary, as orders are announced by the court, to make a memorandum thereof for his own guidance in entering the orders on the register of actions and in the minutes. These memoranda are often referred to as 'rough minutes' but they do not constitute an official record of the court. They are sometimes useful as evidence, if the proper foundation is laid, but they have no inherent vitality or effect. We cannot regard this personal memorandum as in any sense a record of the court, or as an official record of any character."

In Bruce v. Ackroyd, 95 Conn. 167, 110 A. 835, the court said: "It has been repeatedly held that a memorandum

signed by the judge cannot be taken or used as the record judgment. It is but a direction to enter judgment as distinguished from a judgment, and the judgment became final only when entered in a court from which execution can issue.''

In Leveringe v. Dayton, 4 Wash. C. C. 698, 15 Fed. Cas. 414, it was said concerning the record of the judgment of another court filed in evidence: ''But the paper produced is not the record of a judgment; it is the mere minute of the proceedings of the court, taken by the clerk to enable him to make up a record. The paper contains no judgment, nor even the minute of a judgment, for any sum at all, unless we are to connect the fact with a journal entry 'judgment for the United States,' and then conclude that the aggregate of the sum stated is that for which the judgment was rendered; which would be going much further than any court, in my opinion, ought to do.'' In the case of Weed v. Weed, 25 Conn. 336, the court said: ''Nor were the entries made upon the docket books, records, in the proper sense of the term, but mere memoranda, to assist the memory of the clerk, in afterwards drawing up his record.'' And in an early case in Colorado, Hoehne v. Trugillo, 1 Colo. 161, 91 Am. Dec. 703 the court, by Hallett, C. J., said: ''A mere minute or memorandum of a proceeding is not a record. And we have nothing more than memoranda in this transcript. For instance, the entry of which is said to be a judgment, is as follows: 'Judgment given by default by order of the court,' following which is a statement that the plaintiff below filed a note of a certain amount. There is no statement that any sum of money was recovered by one party from the other, or that anything was considered or adjudged by the court, or indeed, anything that is essential to a judgment.''

Counsel for appellant have cited, in support of their contention on this point, McIntyre v. No. Pac. Ry. Co., 58 Mont. 256, 191 Pac. 1065, wherein it was held, under a

statute of that state presently to be explained, that the return and recording of a general verdict makes it the ministerial duty of the clerk to enter judgment, or, in other words, that "the recording of the verdict under the direction of the court is the rendition of judgment," and that "thereafter the court has no other function to perform with reference to it, unless it has ordered the case to be reserved for argument or further consideration, or granted a stay of proceedings;" that the custom of drawing a formal judgment and having the judge sign it is usually observed, but is not required by the statute. The statute in question provided that "when trial by jury has been had, judgment must be entered by the clerk, in conformity to the verdict, within 24 hours after the rendition of the verdict, unless the court order the case to be reserved for argument or further consideration, and shall grant a stay of proceedings."

We have no statute thus fixing the time within which the verdict shall be entered. But that case is not in point here for another reason, viz: That the record in *this* case fails to show either that the court directed the recording of the verdict, or that it was in fact properly recorded in the journal until and as a part of the judgment of September 1, entered in the journal on September 3. The only prior showing of the verdict upon the journal shown by this record is by the said entry of "Clerk's Minutes." And the vitality and effect of that entry depends upon the legal force and effect of such clerk's minutes as a record. And we think it apparent from what has been said above, that except so far as it might properly be used as evidence, such as to amend a record, for example, it has no force or effect as a record. And, therefore, recording the same in the journal merely as a record of the minutes cannot add anything to its force or effect.

The principle announced in the Montana case is found stated also in 34 C. J. 47, Sec. 177, from which we quote: "The return and recording of a general verdict under the

direction of the court is generally a sufficient *rendition* of judgment; no further action on the part of the court is necessary, and it is the ministerial duty of the clerk to enter the proper judgment upon the verdict. Such entry is theoretically in accordance with the direction of the court, although in actual practice the entry is usually made by the clerk ·without any specific direction of the court to that effect.'' Then follows the statement of an exception that where a special verdict, or special findings are returned, the clerk has no authority to enter judgment, but the court must first render judgment on the facts found as a judicial act.

We call attention again to the fact that in this case there was no formal recording of the verdict in the court's journal at the trial term, and not until it was recorded therein as a part of the order signed by the judge, which occurred on the first day of the September term. But we are not ready to yield our assent to the principle that a verdict, though recorded in the journal as such, amounts to a judgment or the rendition of a judgment under the practice and statutes of this state. The statute expressly requires that a judgment be *entered* upon a verdict, and also that all judgments shall be entered upon the journal, specifying clearly the relief granted or order made. And the removal statute under which this case is prosecuted provides that if the defendant be found guilty of the misconduct or malfeasance charged, ''a judgment shall be entered removing the defendant from such office and taxing against him the costs of the action.''

We think that the correct general rule is that stated in Elliott's General Practice, Vol. 2, Sec. 1020; ''It is the judgment or decree, and not the verdict or finding, that expresses the sentence of the law. The court, as the organ of the law—and only the court can pronounce the ultimate law of the case—pronounces the judgment which gives effect to the finding or verdict. The finding or verdict does not have the force of a judgment of the court,

for the utmost effect that can be assigned to it is that, if valid or effective, it authorizes a judgment.''

The necessity for a judgment to be entered was recognized in this state in the early case of U. P. Ry. Co. v. Byrne, 2 Wyo. 109, where it was said that where the basis of a judgment has been laid, the point for entering judgment has been reached, the order for its entry is a form, and any judge qualified to act in the case may make the order. That was said in answer to the claim that the judge who tried the case must necessarily have made the order for the entry of judgment upon the verdict. Again, in Mosher v. County Commissioners, 2 Wyo. 462, the judgment as rendered was as follows: ''The court having heard all the evidence offered, is of opinion that the conclusions of law are with the defendants. The court, therefore, finds for the defendants, and that the defendants recover their costs taxed at $———— from and of the plaintiff.'' That was held not to be a judgment, but merely a statement of findings, and that the only judgment recited was for costs, which was left blank. While it was said by this court in B. G. & B. Ditch Co. v. Morrow, 8 Wyo. 537, 59 Pac. 159, 80 Am. St. Rep. 955, that the fact that the amount of costs taxed is left blank in the judgment entry does not invalidate the judgment, the case was distinguished from the Mosher case because of the fact that in the Mosher case it was doubtful if the entry amounted to a judgment at all, even had the blank been filled. See also Gramm v. Fisher, 3 Wyo. 595, 29 P. 377 4 Wyo. 1, 31 P. 767. The verdict in the case at bar found merely in favor of the plaintiff upon the issues and against the defendant, and that the defendant had been guilty of misconduct and malfeasance in office. Something more was surely necessary to amount to a sentence of the law removing the defendant from office. And, without conclusively deciding the question, we think it may be at least doubtful whether alone upon such a verdict, under this removal statute, the clerk should, as a mere ministerial

act, enter up a judgment in the proper form declaring the defendant to be removed from his office of county commissioner.

It is said in Coe v. Erb, 59 O. St. 259, 52 N. E. 640, 69 Am. St. Rep. 764: "The requirement that all judgments must be entered on the journal carries the implication that until that is done the judgment is inchoate only; it is incomplete. Though possessing the character of potentiality it lacks the character of actuality, and hence is without probative force."

In a case tried without a jury (Judson v. Gage, 98 Fed. 540, 39 C. C. A. 156) where a formal written judgment was not made and signed until the term succeeding the one at which the matter was orally determined, it was held that the judgment came into existence only at the later term, and that the court had jurisdiction at that term to vacate it as erroneous upon ordinary motion. The trial judge had made a memorandum to the effect that the defendant contended that the court had no jurisdiction to vacate (a case in eminent domain) because the award was presented during a preceding term at which judgment was rendered thereon; relying upon certain entries in the judge's minute book stating: "Oct. 5. Award of $32,000 in favor of Judson, and U. S. is satisfied with award, and asks that report be accepted and discontinued as to others. Order discontinuance granted. Balance continued. Oct. 7. * * * Award approved and accepted; $32,000." As a part of the same memorandum, it was stated as the trial court's view that said minutes were not in any sense the entry of a judgment, but mere memoranda as to proceedings in court and as to the course to be pursued when the judgment shall be presented. This view was sustained by the appellate court, the Circuit Court of Appeals, Second Circuit.

We conclude upon this point, therefore, that the date of the judgment upon the verdict, rendition as well as entry, was September 3, 1925, when the order signed

by the judge appears to have been filed and entered, thereby holding against appellant's contention that defendant's motion to vacate the judgment must be considered as a motion for that purpose *after the term* at which the judgment was made or rendered.

2. Whatever the nature of the action under this removal statute in other respects, and the trial court classed it as civil rather than criminal, we have no doubt that, procedurally, it is to be held and treated as a civil case, as the effect of several declarations in the statute referring to the code of civil procedure as furnishing the rule of practice, where no special provision is made. Thus it declares that upon the filing of the petition commencing the "action" a summons shall be issued for the defendant "as in civil cases;" that the answer day shall be the same as "now provided for civil cases;" and that either party may commence an appellate proceeding in the Supreme Court "as in civil cases." And we do not understand this theory to be controverted by either of the parties. Hence the propriety of the order vacating the judgment of September 3, 1925 and entering judgment for defendant notwithstanding the verdict is to be determined upon the provisions of the civil code and the rules of law applicable thereto. It is therein provided, as above stated when referring to the respective contentions of counsel, that "when, upon the statements in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, although a verdict has been found against such party." Comp. Stat. 1920, Sec. 5895.

And there can be no doubt that the court acted under that provision when ordering judgment for defendant upon declaring the former judgment to be vacated. The grounds of the motion so indicate, and, accompanying and filed with the said order and judgment, was a letter signed by the judge addressed to counsel for both parties, explaining the court's action in this case, and in a

companion case now before us on error, stating, among other things (quoting only the more material parts):

"These cases were brought upon a special statute * * *, and the court is of the opinion that there are many essentials in that law that should be not only stated in the petition, but proved on the trial, in order to give the court jurisdiction * * *. The court is of the opinion that the petitions * * * are not only insufficient to state a cause of action, but that the court was wholly without jurisdiction to try the cases upon the many grounds set forth in the motions and reasons advanced by way of argument."

We shall assume, in view of the district court's inherent control of its judgments during the term at which they are rendered, and our holding that the original judgment and the order vacating it were made at the same term, that had the order complained of ended with the vacation of the original judgment, allowing the case to stand for a new trial, or so directing, the propriety thereof could not have been successfully challenged except by showing it to have been an abuse of sound discretion. McGinnis v. Beatty, 28 Wyo. 328, 204 Pac. 340. It will be necessary only, therefore, to discuss the propriety of the order for and entry of judgment for defendant notwithstanding the verdict that had been directed and returned for the plaintiff and upon which the original judgment had been rendered. As might be supposed, appellant's contention in opposition to that action of the court is that none of the grounds therefor stated in the defendant's motion was or is sufficient; and counsel for the state have presented an elaborate brief covering the points involved, in support of that contention. But we shall follow the order in which the questions to be considered are discussed in respondent's brief, since it was his motion that was sustained, and the result of this hearing must depend upon the sufficiency of the grounds stated in that motion to justify

the order and judgment appealed from. The several grounds separately stated in the motion, as above recited, are practically resolved into one general ground, namely, that the petition does not state facts sufficient to constitute a cause of action, that is to say, cause for removal of the defendant, or to confer jurisdiction upon the court to render or enter judgment of removal. And the first point argued in support thereof is that the court was without jurisdiction to try, hear and determine any matter in controversy because of the failure on the part of the state to follow the procedure prescribed in the removal statute aforesaid; that contention being based particularly upon the first two sections of the statute, reading as follows:

"Sec. 1398. Every county officer shall be removed from office by the district court of the proper county, upon charges made in writing and hearing thereunder, if after proof submitted the court shall be satisfied that the said officer has been guilty of misconduct or malfeasance of office in the manner following:

Sec. 1399. Whenever it shall appear to the governor on verified complaint in writing of qualified electors of the county or otherwise, that any county officer is guilty of misconduct or malfeasance in office, he may direct the county and prosecuting attorney of the county, or the attorney general to commence and prosecute an action in the district court of the county in which said officer is an official praying for the removal of such officer. Such action shall be commenced by the filing of a verified petition in the name of the state of Wyoming signed by the county and prosecuting attorney or the attorney general and shall set forth the facts constituting such misconduct or malfeasance in office."

The precise point intended thus to be presented seems to be that a direction for the commencement and prosecution of such an action is conditioned upon its appearing to the governor upon a verified complaint in writing of

qualified electors of the county or otherwise that the officer against whom the action is to be commenced and prosecuted is guilty of misconduct or malfeasance in office; and that it is essential that the existence of such condition be alleged in the petition as well as the fact that the action has been directed by the governor. And we understand it also to be contended in the same connection in support as well as independently of the point aforesaid that the words "or otherwise" are not to be taken as meaning any kind of information received by the governor, but that the information upon which the direction is based should be furnished by a verified written complaint of qualified electors of the county, or in some like manner, if any such might be possible, interpreting the words "or otherwise" by the rule of *ejusdem generis*. And our attention is called to the fact shown by the record that the portion of the governor's letter directing the prosecution was introduced in evidence by the state, and that it stated the source of the governor's information as follows: "It having been made to appear to the governor upon an examination of the report of the state examiner, and otherwise, that J. E. Scott and G. T. Morgan, as members of the Board of County Commissoiners * * * have been and are guilty of acts constituting misconduct and malfeasance in office."

It is argued also that the governor's communication should specify or designate, at least generally, the act or acts supposed or appearing to the governor to constitute misconduct or malfeasance in office, though it is conceded that it might not be necessary in such communication to specify such acts with the particularity required in a complaint or petition.

We cannot agree that any particular act or acts of misconduct or malfeasance must necessarily be designated in the executive communication. The purpose of that communication is not to *formulate* a charge of misconduct, but to direct the prosecution of an action wherein the

charge or charges will necessarily be formulated. The object of the prosecution is not to exact a penalty or impose a punishment but to relieve the public of an officer believed to be unfit to further perform the duties of the office because of acts of misconduct, one or more of which, at least, have been brought to the governor's attention. There may be other acts, either of misconduct or malfeasance, of the same or a different nature from those placed before the governor. And we perceive no reasonable ground for holding that such an action must be limited to a particular act or acts mentioned in the executive communication.

We think it reasonable to suppose, however, that ordinarily the information furnished to and acted upon by the governor would be transmitted through a reference by that official in some manner to the record, document, or other medium of proof through which the information has been presented. As, for example, it appearing in this case from the proof mentioned in the brief and above referred to, that the information was received by the governor through an official report of the state examiner "and otherwise," it may be reasonably supposed, we think, that the attorney general or the county attorney directed to bring the action would be furnished with a copy of that report or some other means of examining and becoming acquainted with its contents, and thereby learn of the particular acts upon which the executive direction has been based. Or such information might be communicated in a less informal manner. That which we think may be regarded and held as fundamental, antecedent to the filing of the petition commencing a removal action, is that the governor shall have officially received in some substantial and ordinarily reliable manner information deemed by the executive sufficient to make it appear that the officer to be proceeded against has been guilty of misconduct or malfeasance in office and that thereupon, by executive act, a removal proceeding has been directed.

To go beyond that might have the effect of sacrificing substance for form in a proceeding evidently intended to be prosecuted and determined without unnecessary formalities.

3.   Nor can we entirely agree with what we understand to be defendant's contention concerning the manner in which the information or facts as to alleged misconduct must be received to justify executive direction of removal proceedings. We are not convinced that the words "or otherwise" in the phrase found in section 1399 "whenever it shall appear to the governor on verified complaint in writing of qualified electors of the county, or otherwise" must necessarily be construed strictly by the rule of ejusdem generis. That rule has been defined in one of our early decisions to be, citing Sutherland on Statutory Construction, Sec. 270, that when a specific enumeration concludes with a general term, the latter is held to be limited to things of the same kind, "restricted to the same genus as the things enumerated." People ex rel. v. Dolan, 5 Wyo. 245, 39 Pac. 752. But we said, following that:

"We are, it is true, to get at the intent of the legislature in enacting the statute, but we must do that by a consideration of the context, other sections or acts in pari materia, and by the application of the usual and well known rules of construction of words, or terms employed. Unless, therefore, the context forces a different construction, or other provisions exist affecting this matter which lead to such a result, we are inclined, and indeed we are bound to give to these words that construction which is required by the rules already referred to."

In Lowenstein v. Fidelity & Casualty Co., (C. C.) 88 Fed. 474, the words "or otherwise" were considered, as found in an accident insurance policy declaring that the same was not to cover "injuries, fatal or otherwise, re-

sulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled,'' with reference to the insurer's liability for death caused by involuntary and unconscious inhalation of illuminating gas while asleep. The court held that the words did not mean otherwise than if explicitly reading ''poison or anything accidentally or otherwise, consciously, or by act of volition, drawn into the system by inhalation,'' and were to be read so as to cover an ''intentional'' as well as an ''accidental'' taking.

But should the words, as found in our statute, be construed by the ejusdem generis rule, the effect would not be, we think, so narrow as to eliminate, as a proper means of information to justify executive action, the official report of the state examiner, an officer whose duty it is to examine into and report upon the financial affairs of counties and county officers. The preceding phrase should not be held to require either that the information shall be furnished through the means of an affidavit, or necessarily by electors of the county. The legislative intention seems to have been to require, as a condition to affirmative executive action, that it shall not be based upon mere rumor or verbal report or mere hearsay, but upon something substantial and of a nature ordinarily reliable and in a form to be preserved. And surely such conditions may usually be found in the written and filed report of a public official concerning a matter investigated, in the due performance of his public duties. Such method of imparting and receiving information of misconduct or facts tending to show misconduct on the part of a county officer might well, we think, be considered as similar or kindred in kind, force and effect to the information furnished by the affidavits of county electors, which might include but very few signers.

But the general words in question, ''or otherwise,'' are not preceded by an ''enumeration'' of particular terms or words. They are connected with a phrase mentioning one

way only of inducing executive action, so that it might be said, as in the Arkansas case of Townsley v. Hartsfield, 113 Ark. 253, 168 S. W. 140, Ann. Cas. 1916C, 643, that the term is placed "in juxtaposition to the words of the preceding phrase." It was held in that case, construing a provision for the appointment of an officer "when any vacancies in the office shall occur  *  *  *  upon failure to elect by a tie vote, or otherwise" that it was intended thereby to give to the appointing power authority to appoint where no one was elected or where the person elected failed for any reason to qualify. These words were intended in our statute to mean something more than the words of the phrase immediately preceding it. And we cannot doubt the legislative intention thereby to authorize executive action upon other substantial and ordinarily reliable information in such form as to be preserved or become a public record, and bearing evidence of individual responsibility, of at least equal force and effect as an affidavit of electors.

The word "otherwise," as usually defined, does not always mean precisely the same thing. Thus it is defined: "By other like means; contrarily; different from that to which it relates; in a different manner; in any other way; or in other ways; differently." 29 Cyc. 1538. In Ransom v. State, 19 Conn. 291, the court considered a statute providing that if any person or persons "by agents or otherwise" shall keep any tippling house, and upon the contention that the word "otherwise" was to be rejected as without meaning, the court said:

"All statutes, whether remedial or penal, should be construed according to the apparent intention of the legislature, to be gathered from the language used, connected with the subject of legislation, and so that the entire language shall have effect, if it can, without defeating the obvious design and purpose of the law. And in doing this, the application of common sense to the language is

not to be excluded. The rule is not inconsistent with the principle that penal statutes are to be construed strictly. By this is meant only, that they are not to be so extended by implication beyond the legitimate import of the words used in them, as to embrace causes or acts not clearly described by such words, and so as to bring them within the prohibition or penalty of such statutes. * * * No man can read this statute without learning from its entire perusal that the controlling purpose of the legislature was to suppress tippling-houses, under whatever pretence or name established; and thus to prevent the facilities of intemperate and ruinous dram drinking. To reject the word otherwise, from the law, and thus to legalize the evil which it was the object of the statute to prevent, if perpetrated in person and not by agent, would be, not only absurd, but it would involve a judicial repeal of an important part of the law itself. This word was not incautiously introduced into the statute; it was necessary to give full expression to the intent of the legislature.''

In West Chicago S. R. Co. v. Morrison etc. Co., 160 Ill. 288, 43 N. E. 393, it was said that the expression ''through accident or otherwise'' is broad enough to include wear and tear, breakage from inherent defects, or even simple negligence or the torts of others, though that it did not contemplate a wilful trespass.

In Wallace v. Jones, 83 App. Div. 152, 82 N. Y. S. 449, the phrase in a statute ''by collusion or otherwise, contracting, auditing,'' etc., though interpreted by the rule of *ejusdem generis,* was held to mean ''an audit due to some sinister or improper motive and in violation of the public trust.''

In State v. Shade, 115 N. C. 746, 20 S. E. 537, under a statute making an assault committed in a secret manner, by waylaying or otherwise, an offense, it was held that the word ''otherwise'' included, in addition to those accompanied by waylaying, every other assault committed in a

secret manner. It was said in Ohio, State v. Kelly, 32 Ohio St. 421, considering a statute providing for the recovery from any county officer of any funds received by him beyond that specially provided by law "either as fees or for clerk hire, or otherwise": "We conceive that these words 'or otherwise' mean something. They comprehend every case of getting money out of the treasury other than that which the preceding section had provided should be the legitimate one."

In Commonwealth v. Dickert, 195 Pa. 234, 45 A. 1058, under a statute providing for an appointment to fill a vacancy in an office "whether such vacancy occur by the expiration of the term of office or otherwise," the court held that the word "otherwise" was sufficiently broad to cover vacancies by death or resignation, and also to cover vacancies by the removal of the incumbent from the district, and by failure of one elected to assume the duties of the office.

See also Smith v. Library Board, 58 Minn. 108, 59 N. W. 979, 25 L. R. A. 280; N. Y. State L. & T. Co. v. Helmer, 77 N. Y. 64; Ransome v. State, 91 Tenn. 716, 20 S. W. 310; Memphis St. Railway Co. v. State, 110 Tenn. 598, 75 S. W. 730; Whelens's Appeal, 70 Pa. 410; State v. Moores, 58 Nebr. 285, 78 N. W. 529; Philadelphia v. Fidelity & Deposit Co., 46 Pa. Super. Ct. 313; U. S. v. Sheldon, 2 Wheat. 119, 4 L. Ed. 199; Shepherd v. Davis, 91 N. J. Eq. 468, 110 Atl. 17; Pittsburgh etc. Ry. Co. v. Mahoney, 148 Ind. 196, 46 N. E. 917, 47 N. E. 464, 40 L. R. A. 101, 62 Am. St. Rep. 503; Lynch v. Murphy, 119 Mo. 163, 24 S. W. 774; Fellowes v. Day, 4 Ad. & El. N. S. (45 Eng. C. L. 311).

4. Our reference to the fact brought out in the evidence, because mentioned in respondent's brief, that the governor's direction for bringing the action was based primarily upon a report of the state examiner, must be understood as intended for the purpose merely of illustration. For there is no statement of that fact in either

the petition or the answer, and the question here is to be determined upon the pleadings.

Since, according to our view of the matter, the governor was not limited by the statute to proof presented by the affidavits of electors, and is not required to describe or designate, in the executive communication, the particular act or acts of the accused officer deemed upon the proof presented to the governor to constitute misconduct or malfeasance in office, it follows that it was not necessary for the petition in this case to allege the source of the governor's information or what particular act or acts had been designated by the governor. But is it essential that the petition allege more than was alleged in this case, viz: that the action is instituted by direction of the governor of the state? We think not. Such averment must be held to be sufficient as against a demurrer or a motion after verdict alleging that it is insufficient to confer jurisdiction. The object of the action brought pursuant to the governor's direction is not to try or determine whether the proof submitted to the governor was sufficient to justify a conclusion or a declaration that it appeared thereby that the officer had been guilty of misconduct or malfeasance in office. But we think that the official direction for bringing the action must be held to carry the legal presumption, so far as the question of the initial pleading is concerned, that the governor has acted lawfully and in accordance with the statute. Such fact may of course be denied, as it was denied by the answer in this case, and thereby raise the issue whether the source of the information acted upon by the governor was sufficient to comply with the statute, and whether the manner and form in which the action has been directed was a compliance with the statute. If it might be properly contended that the respondent should be entitled to know, by more definite averments, the means of the governor's information, a matter which we do not care to consider or decide, such

an objection can be taken care of at the trial upon objection in the nature of a motion to make more definite and certain.    Under the removal statute aforesaid the only pleadings allowed are the petition and answer.    The answer is to be considered denied without a reply so far as the allegations thereof may conflict with the petition. Comp. Stat. 1920, Sec. 1400.    And by Section 1401 it is provided that the action shall be tried in a summary manner, with or without the intervention of a jury, not less than five nor more than thirty days after the answer day, and that upon the trial "all questions touching the sufficiency and certainty of the allegations of the petition or of the answer shall be heard and determined and such amendments as are not inconsistent with the original pleadings shall be authorized to be made at once and shall not delay the trial of the case."    In the case at bar the record does not show any objection upon the trial to the particular allegation now being considered, except as it might be included in the general objection, made upon the trial, that the petition is insufficient to constitute a cause of action.

5.    A further contention of respondent is that the petition, having reference to the several charges alleging misconduct or malfeasance, is legally insufficient to constitute official misconduct or malfeasance or to furnish ground for a valid judgment of removal.    As against all but three of the several paragraphs of the petition alleging particular acts as grounds for the respondent's removal, the point is made also that they are legally insufficient for the reason that they relate to acts alleged to have occurred in 1924, during a previous term of the respondent's office, and it is alleged in the answer that the acts charged "if committed at all, were committed in a previous term of office."    It was admitted on the trial that the respondent was re-elected in 1924 and took office under the new term in January, 1925.    This might perhaps raise a technical

question whether the point is one arising upon the statements of the pleadings. But the proceedings of the trial concerning this matter are reported in the record as follows, as having occurred immediately after the case was called for trial and the jury impanneled:

"Comes now the above named J. E. Scott and makes this motion to strike all of the allegations in the state's petition which are alleged to have been committed during the year 1924, for the reason that this defendant's term of office as county commissioner expired in the fore part of January 1925 and this defendant is now serving a separate, distinct and different term of office than the one in which the purported acts, as alleged in the state's petition, were purported to have been committed * * *."

Thereupon, the court is reported to have said: "Do I understand that both sides admit, for the purpose of this motion, that the officer here was re-elected in 1924 for the office which he took in 1925? Mr. Sennett (counsel for the state): Yes, if the court please." Thereupon the several charges or paragraphs of the petition referring to acts during the year 1924 were stricken, including acts which occurred after election but before qualification for the new term. And it was stated further, by counsel for the state aforesaid during the discussion between court and counsel as to the said acts occurring in 1924, that: "If the court please, this officer was re-elected in the fall of 1924." "And he took office in January, 1925." "Are we limited to the year 1925, or, in other words, the beginning of this term of office?" The court responded: "Yes. My understanding is that you cannot remove an officer for acts committed during another term of office, that office having expired. Are you ready for trial, gentlemen, on the issues?"

In view of the situation thus related, the trial court must be understood as having entered upon the trial of the facts upon the theory that the averment of the answer that said acts occurred during the previous term of office was admitted as a matter of pleading; and that this court may consider as settled by the pleadings, for all practical purposes in disposing of the question here, that the acts alleged to have occurred in 1924 had occurred during a previous term of the respondent's office,—a term immediately preceding that upon which he had entered in January, 1925, as his own successor, following an election for the new term.

Thereafter, it appears that evidence was taken upon three charges only, alleging acts in 1925. Discussion of the objection to the sufficiency of *those* charges will be postponed until a consideration of the proposition presented by the respondent and controverted by the appellant, that no removal can be ordered, based upon an alleged act of the respondent in a preceding term. But we think it proper to say, first, that none of the charges involved in that question relate to matters indicating general moral or mental incompetency or unfitness for the office, or anything of an habitual characteristic which alone would be ground for removal regardless of specific acts. They were confined principally to alleged specific acts of disregard for statutory procedure in the allowance of claims against the county and in awarding contracts for public work, or in allowing or paying claims of the respondent and other members of the board for services performed for the county; all of which might be discontinued in a succeeding term of office.

The proposition thus before us is one upon which the authorities are in direct conflict, though we think, and as we proceed will endeavor to show, that the weight of authority and the better reasoning support the view that, with some possible exceptions, acts of a preceding term in

the same office are not legal or competent ground for the removal of a public officer, in the absence of a staute expressly or by fair inference so providing.

That seems to be the generally accepted rule in quo warranto, except that where ouster is not the sole object of the proceeding, as where a fine is to be imposed, or a conviction is necessary to invalidate past acts, or to enable the relator to recover damages or costs, the proceeding may be brought or continued after the expiration of the term of office involved. 23 Ency. L. 2nd Ed. 633; 32 Cyc. 1432. And so we find it stated generally under the head of "Removal of Public Officers," including proceedings under removal statutes, that "misconduct prior to the present term, even during a preceding term, will not justify a removal." 29 Cyc. 1411. And that ground for removal cannot be based upon acts done before election and not affecting eligibility; nor upon misconduct in another public office, "nor upon acts committed in a prior term of the same office," though the latter rule was said not to apply to an unlawful act committed after re-election and while performing the functions of the office, but before qualification. 23 Ency. L. 445. In an annotation to the case of Allen v. Tufts, (Mass.) 131 N. E. 573, 132 N. E. 322, 17 A. L. R. 274, where the several cases on the subject are reviewed, it is said (page 279, 17 A. L. R.) that the cases on the question are in conflict, due in part to differences in statutes and constitutional provisions, and also in part to a divergence of views with respect to the question whether the subsequent election or appointment condones the prior misconduct; that it cannot apparently be said that there is decided weight of authority on either side of the question, although the courts and text-writers have sometimes regarded the weight of authority as denying the right to remove one from office because of misconduct during a prior term, and others holding to the contrary have considered that the larger number of the cases.

favored the view denying such right. Also, in the annotation to Brickell v. Hasty, 184 Ala. 121, 63 So. 569, Ann. Cas. 1916 B, 703, 50 L. R. A. N. S. 553, it is said that the decisions are in conflict upon the question and that the conflict is due in part to the particular statutes under which the case arose. See also 22 R. C. L. 569, 570. And so we find it stated in 15 C. J. 453, that no matter on what ground removal is sought, it must appear that the act was committed during the accused officer's current term; citing Advisory Opinion, 64 Fla. 168, 60 So. 337.

Respondent cites the following cases in support of his contention upon this point; most if not all of them being cited and reviewed in 17 A. L. R. supra; State ex rel Brickell v. Hasty, 184 Ala. 121, 60 So. 559, 50 L. R. A. N. S. 553, Ann. Cas. 1916 B 703; Thruston v. Clark, 107 Cal. 285, 40 Pac. 435; Re Advisory Opinion, 64 Fla. 168, 60 So. 334; State ex rel Hill v. Henschel, 103 Kans. 511, 175 Pac. 393; State ex rel Tyrrell v. Jersey City Common Council, 25 N. J. L. 536; Conant v. Grogan, 6 N. Y. State Reporter 322; Carlisle v. Burke, 144 N. Y. S. 163, 82 Misc. 282; State ex rel Rawlings v. Loomis (Tex. Civ. App.) 29 S. W. 415; Gordon v. State, 43 Tex. 330; State ex rel Schulz v. Patton, 131 Mo. App. 628, 110 S. W. 636; Graham v. Jewell, 204 Ky. 260, 263 S. W. 693; Speed v. Detroit Common Council, 98 Mich. 360, 57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555.

The following are cited in appellant's brief as supporting the contrary rule permitting an officer to be removed in one term for misconduct committed in a previous term of the same office; those cases being cited and reviewed in the annotation above mentioned; State v. House, 134 Tenn. 67, 183 S. W. 310, Ann. Cas. 1917 C. 1125; State v. Bourgeois, 45 La. Ann. 1350, 14 So. 28; Tibbs v. Atlanta, 125 Ga. 18, 53 S. E. 811; Allen v. Tufts, 239 Mass. 458, 131 N. E. 573, 132 N. E. 322, 17 A. L. R. 274; Hawkins v. Grand Rapids, 192 Mich. 276, 158 N. W. 953, Ann. Cas.

1917 E 700; State v. Welch, 109 Ia. 19, 79 N. W. 369; Territory v. Sanches, 14 N. M. 493, 94 P. 954, 20 Ann. Cas. 109; State v. Magaarden, 85 Minn. 41, 88 N. W. 412, 89 Am. St. Rep. 534. The following authorities are cited also, but to the point that even upon the rule that an officer may not be removed for misconduct in a previous term, because of the principle of condonation by the election for a new term, a removal may be based upon acts of misconduct committed after re-election and before qualification for the new term: Breckenridge v. State, 27 Tex. App. 513, 11 S. W. 30, 4 L. R. A. 360; Graham v. Jewell, 204 Ky. 260, 263 S. W. 693; State ex rel Schulz v. Patton, 131 Mo. App. 628, 110 S. W. 636; And the following to the point that the rule preventing the removal of an officer for misconduct in a previous term is subject to the exception that such removal may be had if the misconduct in the previous term is of a grossly immoral character, such as defalcation, or gross fraud; State v. Watertown, 9 Wis. 254; Graham v. Jewell, supra. Also the following to the point that the retention by an officer after qualification for a new term of money unlawfully collected during a previous term, or unlawfully retained during that term, or misconduct in a former term continued or consummated in a succeeding term, may constitute misconduct in the succeeding or present term. State ex rel Attorney General v. Lazarus, 39 La. Ann. 142, 1 So. 361; Woods v. Varnum, 85 Cal. 639, 24 Pac. 843; State v. Magaarden, supra; People v. Auburn Common Council, 85 Hun. 601, 33 N. Y. S. 165; and Graham v. Jewell, supra, is again cited, but to the point that evidence of similar acts in a preceding term to those charged as occurring in the later term is admissible to show motive or intent, or to explain or corroborate.

In view of the suggestion in appellant's brief, as well as in the several annotations which have been cited above, that the decisions upon the general question are usually

based upon particular statutory provisions, our own statutory provisions should perhaps be stated before a recital of our conclusion and the reasons therefor. Our Constitution, Art. III, Sec. 18, provides that the governor and other state and judicial officers, except justices of the peace, shall be liable to impeachment for high crimes and misdemeanors, or malfeasance in office, but judgment in such cases shall only extend to removal from office and disqualification to hold any office of honor, trust or profit under the laws of the state; and the party, whether convicted or acquitted, shall nevertheless be liable to prosecution, trial, judgment and punishment according to law. And by Sec. 19, it is provided in that instrument that "all officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law." The first section of the removal statute under which this case is being prosecuted provides that every county officer shall be removed from office by the district court of the proper county upon charges of misconduct or malfeasance "of office" made in writing and hearing thereunder. Comp. Stat. 1920, Sec. 1398. And that is followed by the provision of section 1399, already quoted and to some extent already considered, expressly declaring that the action shall be brought upon direction of the Governor, to whom it has appeared that the officer is guilty of misconduct or malfeasance in office.

It is necessary, therefore, under this statute, to show, in order to remove a county officer, that he has been guilty of "misconduct or malfeasance in office." That was substantially the condition of the statute considered in the early case of Commonwealth v. Shaver, 3 W. & S. (Pa.) 338, wherein it was sought to remove a sheriff under a statute providing that all officers for a term of years shall hold their offices for terms respectively specified "only on condition, that they so long behave themselves well; and

shall be removed on conviction of *misbehavior in office* or
of any *infamous crime.*" Considering the provisions for
removal on conviction of misbehavior in office, it was held
that the trial, conviction and sentence of one holding the
office of the offense of bribing a voter previous to his
election to the office does not constitute a conviction of
misbehavior *in* office. The proceeding was quo warranto.
The court said: "As to misbehavior in office, it is per-
fectly manifest that he (the officer) has not even been
charged with, much less convicted of it." And further:
that "the only conviction that is alleged to have taken
place against the defendant, was *not for misbehavior in
office,* or anything of the sort, but for bribing an elector to
vote for him as a candidate for the sheriff's office, before
he obtained it." And in Speed v. Detroit Common Coun-
cil, 98 Mich. 360, 57 N. W. 406, 22 L. R. A. 842, 39 Am. St.
Rep. 555, speaking to the question of the right to remove
upon charges relating to acts committed before the ac-
cused officer's appointment and induction into his office,
the court said:

"There is no provision in the constitution nor in the
laws which prevents a person from holding office for mis-
conduct in another office which he held prior to the one
to which he was elected or appointed. We have been un-
able to find any authority which justifies a removal for
such previous misconduct. The misconduct for which an
officer may be removed must be found in his acts and
conduct in the office from which his removal is sought, and
must constitute a lawful cause for his removal, and affect
the proper administration of the office. There is no re-
striction upon the power of the people to elect, or the
appointing power to appoint, any citizen to office, notwith-
standing his previous character, habits, or official miscon-
duct." Citing State v. Jersey City, 25 N. J. L. 539; Com-
monwealth v. Shaver, 3 W. & S. (Pa.) 338, and, referring
to the holding in the New Jersey case that the expulsion

óf an alderman for having received bribes did not disqualify him for election to the same office, the court said further: "This may be a proper subject for legislative consideration, but, until the legislature shall choose to disqualify persons from holding office for such reasons, they can constitute no cause for removal."

The governor's direction for the commencement and prosecution of an action for removal can only be, as we have said, for misconduct or malfeasance in office. This is indicated not alone by the provision that said direction is to be based upon the fact that it has appeared to the governor that the officer is guilty of misconduct or malfeasance in office, but as well upon a later provision in the same section that the action shall be commenced by the filing of a verified petition setting forth the facts constituting such misconduct or malfeasance in office. And by the further provision found in Section 1401, that if upon the trial the court shall find the defendant guilty of "the misconduct or the malfeasance in office charged in the petition," a judgment of removal shall be entered. And then a subsequent section (1403), which is otherwise not material to this hearing, provides for a suspension by the governor pending a removal action upon a notice "setting forth the misconduct or malfeasance in office as charged in the petition," and that if upon the hearing the governor shall determine that said officer "has been guilty of said misconduct or malfeasance in office" he may by an order signed and filed "suspend such officer from the further exercise of his duties in said office," such suspense to operate until the termination of the trial. Again, in Section 1405, it is provided that if any officer who shall have been suspended as so authorized is found by the court to be "not guilty of the misconduct or malfeasance in office charged against him" he shall be restored to his office and shall receive the compensation therefor during the suspension period, and be reimbursed by the state for all

of his actual and necessary expenditures in connection with all trials and hearings provided for in the chapter. Another section which is more or less material here—the last found in the chapter (Sec. 1407), provides that nothing in the chapter shall be construed as repealing any law making it a crime or misdemeanor for said officers to violate certain statutes of the state and providing a punishment therefor; and that proceedings under the said removal statute shall not be a bar to proceedings under any criminal statute of the state.

Let it be repeated, then, that to justify the commencement of a removal action under said statute, or a judgment of removal therein, it must have appeared to the governor that he *is* guilty of misconduct or malfeasance in office, and it must be found that he "has been guilty of the misconduct or the malfeasance charged in the petition." A general incompetency, disconnected with any act or acts upon which to base a charge of misconduct or malfeasance, evidently would be insufficient under the statute. It is evident also, we think, that the word "office" found in either phrase "misconduct and malfeasance in office" and "removal from office" have the same meaning; and the removal is supposed and intended to be from the office wherein has occurred the misconduct and malfeasance. We are to determine whether the word "office" in that sense and with that meaning is to be limited to the "term" of the office or whether the officer may be shown to have been guilty of malfeasance during one term and after its expiration and a new election and a new qualification and an entrance upon a new term, may then be prosecuted and removed from *that* new term for misconduct of the preceding term. We think it must be limited to the term, in accord with what we believe to be the weight of authority and better reasoning upon the question. The action is not to punish for a past offense. When the term for which the officer has been elected ex-

pires, then for any misconduct or malfeasance not coming within any of the supposed or possible exceptions to the rule, no removal is necessary; for all substantial and practical purposes the result that the statute provides for will have been accomplished through the regular operation of the law vacating the particular office, and no action as to any such misconduct or malfeasance would be necessary. The fact that no removal proceeding had been brought, which might have been done, is surely no ground for a later action after the term has expired. And, in the event that such officer is not re-elected, but is succeeded by another, it is quite plain that no action would lie merely to carry out the penalty of removal provided by the statute.

We cannot see the force of the reasoning of some of the cases taking the contrary view, that because in such case the officer becomes his own successor and continues to perform the duties of the same office, he is still liable for removal for the new term solely for the misconduct or malfeasance of the old term, where there is no statute clearly or by reasonably fair inference so providing. Under our statutes, as we imagine under the statutes of most of the states, following a re-election, a new oath, and a new bond, if it happens to be an office requiring bond, are required, just as much of one who succeeds himself as of another who has been elected as his successor. In addition to the fact that the term wherein the misconduct or malfeasance has been committed has expired, therefore making unnecessary and practically impossible a judgment of removal, at least one that is unenforceable except when applied to remove from another term, a ground found strongly stated in several of the cases, is the principle of condonation by the election or appointment of the officer to succeed himself for another term. That principle, in the case of an elective office, finds strong support upon conditions in this state, where both the resident and voting population of the several counties are compara-

tively small in numbers. The largest vote in any county in 1924 for the office of governor was less than 14,000, and that in the county where this case arose, and as small, in one county, as 629, ranging from that to 814; 1753; 3745; mentioning the vote in a few of the smaller counties. But the principle is the same, regardless of the number of the resident or voting population. It rests upon the fact that the officer has been *again* chosen for an office for which he has not been *disqualified* by any act committed by him during a former term, however this may have justified removal. There is no provision of law in this state disqualifying for re-election an officer subject to be removed or who may have been removed under the statute in question for misconduct or malfeasance. And that being so, the effect of a decision permitting his removal in a subsequent term on the sole ground of mistake or malfeasance in a prior term would, in our opinion, amount solely to a *judicial* disqualification for public office, a matter which has not been left to the courts by the legislature, or the people in framing the Constitution. A case frequently referred to, holding what we have referred to as the contrary rule, is the Iowa case of State v. Welch, supra, decided in 1899. We quote from the opinion the reasons for the rule adopted in that case, for they state them substantially as relied upon in other cases of the same kind. It appearing that the averments of misconduct during the officer's first term had been stricken from the petition on the ground that removals were allowable only for acts during the term then being served, the court said:

"The statute contains no such limitation. The very object of removal is to rid the community of a corrupt, incapable or unworthy official. His acts during his previous term, quite as effectually stamped him as such as those of that he may be serving. Re-election does not condone the offense. Misconduct may not have been discovered prior to election, and, in any event, had not been estab-

lished in the manner contemplated by the statute. The defendant was entitled to the office until his successor was elected and qualified. Being his own successor, the identical officer continued through both terms. His disqualification to continue in the particular office results from the commission of some of the prohibited acts during his incumbency. This has been the uniform rule in impeachment trials, where, involved with removal from office, is the penalty of disqualification to hold any office of honor, trust or profit in the state. * * * It is doubtless true that a removal cannot be had on account of misconduct in another office, but only so because such a provision may not be included among the statutory causes of removal. * * * This may also be said of offenses committed previous to being inducted into the particular office. * * * For many purposes each term of office is separate and entire. This is especially true with respect to the obligation of sureties. But there is no reason for so holding as to the incumbent. Being his own successor, there is no interregnum. His qualification marks the only connection between his terms. The commission of any of the prohibited acts the day before practically stamps him as an improper person to be entrusted with the duties of the particular office as though done the day after. The fact of guilt with respect to that office warrants the conclusion that he may no longer with safety be entrusted with discharging his duties.''

The opinion fails to recite the statutory grounds for removal. While we are quite willing to concede that the object of removal is to rid the community of a corrupt or unworthy official, doubting the propriety, however, of the use of the word ''incapable'' with reference to a removal proceeding under *our* statute, we are nevertheless confronted, in our statute, with a provision providing for and permitting a removal *only for misconduct or malfeasance in office*. And while that might stamp him, to use the

words of the decision above quoted from, as an improper person to be entrusted with the performance of the duties of the office, he would not be removable under our statute merely because he might be regarded as an improper person to be entrusted with the performance of the duties of the office.

It may be that the grounds of removal in Iowa included, as in Massachusetts, where, in a decision on the same question, somewhat similar language is employed, a general ground of removal. Thus in the last named state the statute provided that ''if sufficient cause is shown therefor, *and it appears that the public good so requires*'' a majority of the justices may, upon a summary hearing or otherwise, remove a county officer such as named in the statute (italics ours). See Allen v. Tufts, supra. Again, in the Iowa case it is said that misconduct may not have been discovered prior to election. But it must be equally true, as a mere inference, that the misconduct *may have been* discovered *before* the election and have been well known to the electorate, notwithstanding which the incumbent was re-elected. We could not in this case reasonably ground our decision in favor of any such rule upon an *assumption* that misconduct *may not have been* discovered prior to the election. In that decision also, reference is made to the ''disqualification'' of the incumbent to continue in the particular office resulting from the commission of some of the prohibited acts during his prior incumbency. We could not rightly speak in such terms of the office here involved, for the alleged acts of misconduct and malfeasance, assuming them to be competent grounds for removal, would not, if committed, have disqualified the respondent to hold the office upon a subsequent election, nor would his removal therefor during a former term have operated as a disqualification. The so-called rule in impeachment trials that, in addition to removal there may be a judgment disqualifying the incum-

bent from holding any office of honor, trust or profit under the laws of the state, does not apply to removals of county officers under our statutes and constitution. For county officers are *not subject to impeachment* in this state, under any law now in force. Nor do we find any expression in the statute anywhere with reference to public officers, their qualification, election, tenure or removal, which would justify a statement by this court to the effect that the respondent, even though guilty of the various charges of misconduct and malfeasance alleged in the petition, would have been disqualified for re-election or for continuing in the office. Thus, the principles upon which the Iowa case was decided cannot be applied under *our* constitutional and statutory provisions.

In the recent case of Graham v. Jewell, supra, the court of appeals of Kentucky said, discussing the point that it is essential that the findings in a removal proceeding be supported by some evidence and be based upon legally sufficient charges:

"In this respect it is insisted by appellants that the evidence should be limited to acts occurring within his present term of office. A motion to that effect was made before the Board, and objections taken to all evidence of prior transactions. In impeachment or other proceedings for removal, where the statute for removal carries with it a disqualification to hold office in the future, a removal may be had for acts committed during a prior term of office." Citing the Iowa case of State v. Welch, supra, and McLaughlin v. Shore, 152 Ky. 746, 154 S. W. 45; thus apparently assuming that under the Iowa statute a removal carried with it such a disqualification to hold office in the future; and indeed, our attention is called to a provision in the Annotated Code of Iowa for 1897, Section 1273 (the case was decided in 1899) for a limited disqualification, viz: "that no person can be appointed to fill a vacancy who has been removed from office within one year

next preceding.'' The court, in Graham v. Jewell, then continued:

"In the absence of such a statute it has been held that each term of office is separate and distinct, and an incumbent may not be removed for misconduct in another office, or for an offense committed prior to his qualification." (Citing Speed v. Detroit, State v. Jersey City, Commonwealth v. Shaver, supra) "And there is an intimation to the same effect in Dolan v. City of Louisville, 142 Ky. 818, 135 S. W. 272. Where the incumbent is his own successor, there is a conflict of authority on the question. Authorities on both sides of this question are collated in notes to State v. Brickell, 50 L. R. A. N. S. 553, and Allen v. Tufts, 17 A. L. R. 279, 283, and it seems the weight of authority denies the removal for acts committed in a prior term. *The reason is that each term of office is a separate entity, that a removal in the absence of a statute of disqualification does not extend beyond the term; that the people, or an appointing power, in the selection of an officer, may condone past delinquencies, and re-elect him, and that in the preceding term he is only liable for delinquencies occurring therein.* (Italics ours.) The other line of cases are based on the rule: 'The object of the removal of a public officer for official misconduct is not to punish the officer, but to improve the public service and to free the public of an unfit officer.' " (Citing State v. Leach, 60 Me. 58, 11 Am. Rep. 172) "They proceed upon the theory that the officer's acts during the previous term, quite as effectually stamp him as unworthy as do those of that he may be serving and that re-election does not condone the offense. See State v. House, 134 Tenn. 67, 183 S. W. 510, L. R. A. 1916 D. 1090, Ann. Cas. 1917 C. 1125, and cases there cited. We are of the opinion that the first rule announced is the safer to follow, though we recognize some exceptions to it. Certainly it cannot be said that the electorate condones an offense of immoral conduct com-

mitted by a re-elected incumbent after election and before qualifying for the new term. As was said in a similar case (State v. Watertown, 9 Wis. 24): 'We do not say that in no case could acts done during a prior term justify a removal. Thus, if, after a treasurer was elected, it should be discovered that during his prior term he had committed a defalcation, and been guilty of gross frauds in the management of his office, it might perhaps be just ground for removal.' * * * Also upon a charge of present misconduct, evidence of similar delinquencies during a prior term might be admissible as showing intent, motive, or a general manner of procedure or otherwise illustrating the point in issue or corroborating other evidence relating thereto.''

In Alabama, the maximum penalty in impeachment seems to be, in addition to removal, a disqualification for term of election only. So the court in that state say that a re-election operates as a condonation. State v. Hasty, supra.

A Missouri Court of Appeals decision, State ex rel Schulz v. Patton, supra, involved the question of the right to remove a treasurer for embezzlement as collector prior to his election as treasurer, and it was held that to justify a removal, the misconduct must, in the absence of statute, be such as would be a legal cause for removal and affect the administration of the particular office, the rule being based upon the doctrine of condonation of past offenses. We quote from the decision because the argument touches some points seeming to be equally pertinent upon the question here.

''While it seems that the defalcation in the office of collector ought to be sufficient cause for removal from the office of treasurer within the contemplation of the statute, supra, the weight of authority indicates and supports the law to be that, unless the incumbent has been convicted in

a court of law, prior to such proceeding, the misconduct for which the removal is sought, in the absence of statutory specifications to the contrary, must be misconduct with respect to the execution of the particular office from which the incumbent is sought to be ousted, and such misconduct must constitute a lawful cause for removal, and affect a proper administration of such office. The fundamental principle involved in this doctrine is that of condonation for past offenses, and it seems there is a special reason for its application with respect to elective offices. This must be true when we reflect that all presumptions go in aid of the incumbent, and that the constituency which has seen fit to confer the office by popular election is presumed to have knowledge of prior derelictions of the present incumbent in the former office, condoned his offenses, and subsequently awarded him a new commission by a free expression of the popular will. Indeed, as has been well stated, the door of reform is always open, and it is the part of a Christian people to condone and forgive. There is no restriction whatever in our constitution or statutes, respecting the office involved, upon the power of the people to elect, or, for that matter, the power to appoint, any citizen to office, notwithstanding his previous character, habits, or official misconduct, and the doctrine of the law predicates upon this thought as fundamental.''

In that opinion also attention is called to the fact that the Louisiana case, State v. Bourgeois, supra, cited here by the appellant, though one of expulsion from present office for misconduct during a prior term, turned upon, and was determined by, a construction of the Constitution of the state.

In the Michigan case of Hawkins v. City Council of Grand Rapids, cited by appellant as holding to the contrary rule, the point was not directly decided, but the court said:

"We are not prepared to find in this case, nor to hold as a general rule, that the misconduct of an officer who is his own successor, committed during the preceding term, may not be inquired into and furnish ground for his removal." It appears that the order appealed from was reversed upon grounds of serious defects in the procedure whereby the removal by the members of the council had been declared. We think it unnecessary to refer specifically to the other cases cited upon the question. They are reviewed in the several annotations which we have mentioned. Our conviction is that as to the misconduct or malfeasance charged as having occurred in 1924, the petition must be deemed insufficient because of the admitted fact in the case of respondent's re-election. Whether the facts of any of those charges might have been admissible in evidence for the purpose of showing motive or intent or an habitual abuse of the duties of the office in support of similar charges as occurring in 1925, after the respondent had entered upon his new term, is a question not before us. This case rests upon the pleadings.

We hold further with the trial court that as to acts alleged to have occurred subsequent to the election in 1924 and before the qualification of the respondent, presumably on the first Monday of January, 1925, such charges were legally insufficient so far as they are alleged in the petition without any attempt by the allegations to connect any such alleged misconduct with any of the acts of the respondent during his present term.

6. There remains to be considered the sufficiency of three or perhaps four of the charges relating to acts alleged to have been committed in 1925, upon and in support of which only, evidence was offered upon the trial. Two of the paragraphs containing those averments were amended upon the trial, namely, the 38th and 39th, reading as follows:

"38th. That on or about the 30th day of January, 1925, while said defendant was acting as a member of said board of county commissioners, one R. C. VanDenberg presented to said board an unitemized, undated claim for services alleged to have been rendered said county in the sum of $150,00, there being no specified fees allowed by law for such services, and said claim not specifying the time actually and necessarily devoted to the performance of said service, which said claim was, on the 3rd day of February, 1925, by said board ordered paid, the said defendant consenting thereto and participating therein, all of which was unlawful, and knowingly done and committed by said defendant in violation of his official oath and bond."

"39th. That on or about the 5th day of March, 1925, while the defendant was acting as a member of said board, the said board of county commissioners, by and with the consent and participation of the defendant, had ordered paid to one R. C. VanDenberg the sum of $150.00 upon the claim of said R. C. VanDenberg dated March 5th, 1925, which said claim was unitemized, unverified, and no date set forth on which any labor or services were performed or rendered for said county, all of which was unlawful, and contrary to and in violation of the official oath and bond of said defendant."

The 41st and 42nd paragraphs, the other two under which it may be supposed that evidence was offered, read as follows:

"41st. That the said defendant as a member of the Board of County Commissioners of Natrona County, State of Wyoming, has been guilty of misconduct and malfeasance in office in failing to advertise for bids for the building of roads and bridges and the purchase of supplies for such work:

42nd. That the said defendant as such county commissioner has been guilty of numerous acts of misconduct and malfeasance in office during his term of office, and that it would serve no useful purpose to set forth the many other acts of misconduct and malfeasance in office of which he has been guilty, but would only encumber the record and prolong the trial.''

A motion was made to strike from the petition the said 41st and 42nd paragraphs on the ground that they did not specify any particular acts and were therefore insufficient, which motion was denied and the ruling thereupon excepted to; and under one or both of those paragraphs, evidence was introduced with reference to the building of a certain bridge, concerning which it was contended that there had been no advertising for bids, as required by law (Comp. Stat. 1920, Sec. 3064). It is conceded that the 38th and 39th paragraphs are intended to charge a violation of Section 1416, C. S. 1920, which provides that no account shall be allowed by the board of county commissioners unless the same shall be made out in separate items, properly dated, and the value of each item specifically described, and when no specified fees are allowed by law, the date that such services were rendered, and the time actually and necessarily devoted to the performance of any service shall be specified, which account shall be verified by affidavit, setting forth that the same is just and correct, and that the whole or no part has been paid by the county or any individual. The next succeeding section, 1417, should be read in connection with 1416. It provides that for any violation of Sec. 1416 the board of county commissioners shall be held responsible on their official bonds to the full amount of any account so allowed, to be recovered in an action of debt for the use of the proper county, should the evidence show that all or any part of any account has been allowed by any board contrary to the provisions of said Section 1416.

The rule which we think must be adopted as a criterion for determining the sufficiency of a petition in this kind of an action we find well stated in a recent decision in West Virginia, Sharps v. Jones, 131 S. E. 463. It is there said "While charges for the removal of a public officer need not be set out in the strict form of an indictment, they should be sufficiently explicit to give the defendant notice of what he is required to answer. Nothing should be left to intendment, and so far as possible the facts constituting the alleged offense should be so far detailed as to show a reasonable cause for removal and to enable the accused to make due preparation to contest and disprove the charge against him.''

Several cases are cited in the opinion in support of that general statement of the rule, including 17 Ency. Pl. & Pr. 219, 20 Standard Ency. Proc. 788, 789; 22 R. C. L. 572; Moore v. Strickling, 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279; State v. City of Ballard, 10 Wash. 4, 38 Pac. 761; In re Stow, 98 Cal. 587, 33 Pac. 490; People v. Therrien, 80 Mich. 187, 45 N. W. 78; Myers v. Nichols, 68 W. Va. 37, 126 S. E. 351. It is said in 15 C. J. 453, that "it is necessary that the petition contain allegations sufficient to make a case, but where it does contain such allegations, it is not required that all the evidence be stated, or that all the specific acts of guilt be enumerated; and that while no demurrer is contemplated by some removal statutes, an objection to the introduction of any evidence should be allowed and sustained where it affects the real merits of the controversy and the real and substantial rights of defendants.''

The principle is that the charge as alleged must be legally sufficient. Henderson v. Lane, 202 Ky. 610, 260 S. W. 361. In Dullam v. Wilson, 53 Mich. 393, 19 N. W. 112, 51 Am. Rep. 128, it was said in the leading opinion, as quoted in People v. Therrien, supra:

"There must be charges specifying the particulars in which the officer is subject to removal. The officer is entitled to know the *particular* acts of neglect of duty or corrupt conduct, or other act relied upon as constituting malfeasance in office."

And in the opinion by another justice, it was said, as quoted also in the Therrien case:

"It has always been held that general conclusions or conclusions on general charges were not enough, but the facts on which the judgment was based must appear, either in specific charges, or in specific findings, on which the party has been heard upon legal proofs. * * * These cases (cited or reviewed in the opinion) not only require a proper hearing on proper charges, but hold that those charges must consist of distinctly stated facts, and not general charges of wrong or neglect, so that it can be determined, as a matter of law, whether what the removing body treats as wrong is within the legal quality of wrong."

In R. C. L., cited in Sharps v. Jones, supra, the rule is briefly stated as follows: "Charges against an officer in proceedings for his removal should specify the causes with such reasonable detail and precision as shall inform him what dereliction of duty is urged against him."

The averments of the 41st and 42nd paragraphs above quoted are too general and clearly insufficient because of the failure to state or describe any particular act or acts intended to be relied upon. The averment is *not* that there was a failure to advertize for bids for the building of *all* roads and all bridges and the purchase of all supplies during the period intended to be covered by the charge; if such a general charge, including all work of the kind, might be held sufficient without specifying any one. But it is in such language, if held sufficient, that

evidence might be directed to the construction of only one bridge or only one road. Nothing further need be said concerning the charge contained in the 42nd paragraph. Indeed, it is doubtful whether it was intended as a charge at all, for it is said that to state the numerous acts of misconduct and misfeasance would serve no useful purpose, but only encumber the record and prolong the trial; seeming to indicate that it would not be expected to introduce any evidence under that charge.

The motion to strike from the petition each of the 41st and 42nd paragraphs on the ground that they were too general should have been granted. But regardless of the evidence, the respondent was clearly entitled to a judgment upon the pleadings as to those paragraphs.

The result of the application of the above rule of pleading to the charges contained in the 38th and 39th paragraphs respectively may not be quite so clear. But we think they must be held insufficient, principally on the ground that very little is alleged except conclusions of law. That the act charged was unlawful and contrary to or in violation of the official oath and bond of the defendant, alleged in each of said paragraphs, is certainly nothing but a conclusion of law and adds nothing whatever of substance to the preceding averments. Burke v. Knox, 59 Utah 596, 206 Pac. 711. Not a single fact is alleged in either paragraph that is not a conclusion, except that one R. C. VanDenberg presented to the board his claim for services alleged to have been rendered the county in the sum of $150. That clearly enough alleges the presentation of a claim for services performed for the county in the sum mentioned. That it was unitemized, as alleged in each of the two paragraphs, is of course a fact, if true, but it is stated merely in the form of a legal conclusion. Corker v. Price, 12 Ida. 152, 85 Pac. 388; Burke v. Knox, 59 Utah 596, 206 Pac. 711. For that may depend upon the proper legal interpretation of the phrase or the lan-

guage used in stating the claim and showing whether it consisted of but one item only or of several items that ought to be separated. To illustrate: In the case of Commissioners v. Denebrink, 15 Wyo. 342, 89 Pac. 7, 9 L. R. A. (N. S.) 1234, this court had under consideration a claim rendered a county by a physician for medical and surgical attendance for an alleged poor and indigent person subject to the care of the county, upon the contention that the claim as presented to the county had not been itemized as required by law. But it was held that by the averments of the petition the claim appeared to have consisted of but a single item requiring no separation into parts. And it was said:

"The allegation in both counts is to the effect that the required surgical and medical attendance was rendered on November 28th, 1904. No charge is made for anything but services, and those services were rendered on the same day. There is no distinct item for medical attention, and giving the words a fair and reasonable construction, in view of the other allegations of the petition, such attention was co-existent in point of time, connected with and necessarily required in the performance of the operation. There is no charge nor attempt to charge for medical services or attendance subsequent to that time. It could very properly be said to constitute but one item, for such an operation would carry with it the duty to do all that was necessary to successfully perform it. * * * From the allegations of the petition, one item would be all that was necessary in such an action to satisfy the law requiring accounts against the county to be fully itemized."

The language or form of stating the character of the services of the claim of services referred to in each of said two paragraphs is not described in either of said paragraphs. It may have been a statement of a regular employee for a month's regular salary or wages, fixed in

amount either by express provision of law or by the
county board, by authority of law; and each may have
been sufficiently itemized by simply stating that it was
for the month or the period mentioned in the claim, giving
the total amount.    And our experience is that it is not
customary in bills of that character to separate continu-
ous service through a period of a month into separate
days or other separate divisions of the month in bills made
out against a county, municipality or the state.    Thus, a
bill could have been presented by the party named in one
paragraph, containing but one item and yet sufficient to
cover the entire period of the service charged for.    And
there is an indication in the petition itself that such may
have been the case, for among the charges stricken out as
alleging facts occurring in 1924 are two or more charges
relating to a presentation of bill for services by the same
party during that year, and also other bills presented by
the same party for certain departments of the county gov-
ernment, as though said party was a representative or
employee of the county.

And if we might refer to the evidence introduced under
these two paragraphs, and we might do that merely by
way of illustration, we should find that the party named,
Van Denberg, had been regularly employed by the county
since January, 1923, apparently without any particular
title but serving part of the time as deputy county clerk,
part if not all of the time as keeper of the county hospital
accounts, and also part of the time, if not all, as an assist-
ant to the county commissioners or the county clerk in
the matter of the audit of claims against the county.    Also,
that the bill alleged to have been rendered about January
30, 1925, was dated January 31, 1925 and in the body of
the claim it was stated to be for "services rendered during
the month of January, 1925," $150.    And that, upon the
other claim, the services were explained as follows: "25
days during the month of February, doing county work,

25 days at $6.00 a day, $150." The form of the oath at the bottom of that claim upon the form furnished by the county appears to have been signed by the claimant, but the place for the signature of the county clerk when administering the oath is left blank; whether it was in fact verified or not does not appear by the bill, nor indeed by the evidence, if we may refer to it for illustration. But the court excluded a question to bring out said fact asked by respondent's counsel. We think it not improper to say that the defendant should have been permitted to show, if it could be shown, that the claimant had sworn to the claim before the county clerk or some other proper officer, who had neglected to sign the jurat as the evidence thereof. And especially should this be so in view of respondent's testimony upon the trial to the effect that claims came to them usually through the county clerk and were usually sworn to before that officer, or at least properly verified before being presented by that officer to the board for action; which would seem to indicate that if there was any lack of formality as to either of the matters mentioned it was rather because the omission to complete the verification was unnoticed rather than an intentional neglect to comply with the law in that particular.

Had it been substantially alleged in the petition in the respective paragraphs what the service was that had been rendered, and the pleader must have known, for otherwise he could not have alleged what will be presently referred to; and had the form of describing the services been alleged, we would have no hesitation in holding, if conforming to the facts shown by the evidence, that each claim consisted of but a single item not requiring any separation into parts.

The statement in the 38th paragraph "there being no specified fees allowed by law for such services," in the absence of any description of the character or nature of the services, amounts to a mere legal conclusion. It might

apply to any of several kinds of service; and would furnish no test upon which might be determined, upon the face of the averment, whether there had been any violation of law in failing to do what is required by the statute when no specified fees are allowed by law for the services. That phrase or clause in the statute does not, in our opinion, have reference alone to a statute fixing a particular fee for a particular service, but we believe that a salary or day, week or monthly wage, fixed by the board by authority of law and made a matter of record in their proceedings, would amount to a specified fee allowed by law, for the statute must receive a sensible and reasonable construction and not one that will pervert it into a mere stumbling-block, to be regarded as a mere matter of form rather than substance. So we think that had the facts shown by the evidence been properly alleged in the pleading rather than mere conclusions concerning them, it could be properly held, not only that each claim embraced but one item of service, but also that the time actually devoted to the performance of the same was also stated.

The purpose of the provisions of Section 1416 was explained by this court in Houx v. Commissioners, 11 Wyo. 52, 70 Pac. 840. Referring to both of the sections, now 1416 and 1417, Comp. Stat. 1920, and some other related sections not material here, we said:

"Considering these various provisions together, which should be done to arrive at an intelligent understanding of the intention of the law-making power, it is plain that the purpose of requiring a full itemized statement was to hedge a county board about with such restrictions in the allowance of bills that individual citizens and tax-payers might have the means of knowing the cause and validity of county expenditures, and that the requirement for verification has for its object a showing of good faith and honesty in the presentation of the bill, and some evidence of the truth, justness and correctness of the claim. As

was said in a recent case, the provisions 'are designed to protect the board from importunities to pass upon claims before they are presented in such a way as to be considered intelligently, to enable it to easily eliminate improper charges from claims, and to enable taxpayers to detect abuses in the allowance of claims.' Northern Trust Co. v. Snyder, 113 Wis. 516, 89 N. W. 460.'' (90 Am. St. Rep. 867.)

Under Section 1416, in connection with Section 1417, the latter making the board liable upon their respective official bonds for any violation of the section, it should appear, in order to constitute ground for removal for neglect to observe strictly the provisions of the section, that it was caused by something more than mere failure to notice the lack of sufficient itemization or statement of dates of service, or the absence of complete verification or a mere misinterpretation of the effect of the claim as made out, where no fraud or actual misapplication of money is involved. The neglect should be such as to involve a wilful design, or indicate an habitual inattention to public business. Not every technical violation of a statute or of official duty will justify the summary removal of an officer. State v. Zeigler, 199 Ia. 392, 202 N. W. 94; State v. Kennedy, 82 Kan. 373, 108 Pac. 837. In State v. Meek, 148 Ia. 671, 127 N. W. 1023, 31 L. R. A. (N. S.) 566, Ann. Cas. 1912 C. 1075.

Our conclusion upon the whole case, then, is that the district court was justified in rendering the judgment notwithstanding the verdict, and that the order and judgment in that respect should be affirmed, and it will be so ordered.

*Affirmed.*

BLUME and KIMBALL, JJ., concur.